**William NORDESTE, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21294.**

United States Court of Appeals
Ninth Circuit.

April 4, 1968.

Jerry D. Whatley (argued), of Wilson & Whatley, Santa Barbara, Cal., for appellant.

William B. Shubb (argued), Asst. U. S. Atty., John P. Hyland, U. S. Atty., Sacramento, Cal.; Cecil Poole, U. S. Atty., San Francisco, for appellee.

Before HAMLEY, BROWNING and CARTER, Circuit Judges.

HAMLEY, Circuit Judge:

William Nordeste appeals from his conviction on six counts of a seven-count indictment charging him with selling, concealing, facilitating the sale, transportation and concealment, bartering and exchanging quantities of heroin on April 1 and 12, and June 2, 1965, in violation of the narcotic laws.[1]

---

1. The narcotic laws in question are section 2(c) and (f) of the Narcotic Drugs Import and Export Act, 35 Stat. 614 (1909), as amended, 21 U.S.C. § 174 (1964), and section 4705 of the Internal Revenue Code of 1954, 68A Stat. 551 (1954), as amended, 26 U.S.C. § 4705 (1964).

Nordeste, who did not take the witness stand, stipulated that he had done each of the acts alleged in the indictment. His sole defense at the trial was entrapment. On this appeal he argues that the charge to the jury on the issue of entrapment was prejudicially erroneous in three particulars and that the evidence was insufficient as a matter of law to negate the entrapment defense.

The evidence bearing upon this defense, considered in a light most favorable to the Government, shows the following: On April 1, 1965, Charles R. McDonnell, an agent of the Federal Bureau of Narcotics, and Porter White, a paid government informant, went to Nordeste's house in Sacramento, California. White had been a paid informant for the government since early 1964. Sometime previous to April 1, 1965, White had been introduced to Nordeste by Gerald Osborne, and White had been in Nordeste's home several times prior to that date. White testified that he had never, prior to April 1, 1965, sold or given narcotics to Nordeste, nor had he been alone with Nordeste. Likewise, Nordeste had never sold or given narcotics to White.[2] However, on three or four of those occasions, White witnessed Nordeste selling narcotics to Osborne.

Before going to Nordeste's home on April 1, 1965, McDonnell and White stopped at a motel, where McDonnell "strip-searched" White. No contraband was found on his person and his money was taken from him until after the ensuing transaction. At about 3 p. m. on that date Nordeste admitted McDonnell and White to his house. Prior to that time McDonnell had never met Nordeste. Inside the house were Gerald and Vivian Osborne, who McDonnell had known for several weeks. White introduced McDonnell to Nordeste as one of Gerald Osborne's customers from Reno. Nordeste and Osborne then had an aside discussion on the patio.

When Nordeste returned to the room McDonnell asked him if he could get any "spoon action." Nordeste replied that he did not have any spoons but had twenty-five-dollar bags and that McDonnell could get as many bags as he wanted. McDonnell asked what kind of deal he could get on six bags, and Nordeste responded, "I can let you have six for $125." McDonnell agreed and Nordeste took a cellophane cover of a cigarette package from his pocket, removed six colored balloons and gave them to McDonnell. McDonnell, in turn, gave Nordeste $125. Nordeste then directed McDonnell and White to leave by the back door. The balloons sold by Nordeste to McDonnell on that occasion were found to contain heroin.

Very nearly the same procedures were followed when McDonnell and White went to Nordeste's house on April 12, and June 2, 1965. On the latter occasion, after McDonnell and White left the premises, McDonnell met with other agents and returned to Nordeste's house about ten minutes later to arrest him. Nordeste's brother let the agents in. Nordeste began running toward the bathroom, but was overtaken and apprehended by McDonnell.

We turn now to Nordeste's contention that the instruction given on the defense of entrapment was prejudicially erroneous.

In its instruction the court told the jury that if it should find that before anything occurred respecting the alleged offenses, the accused was ready and willing to commit crimes such as those charged whenever the opportunity was offered, and the government merely offered the opportunity, the accused is not entitled to the defense of unlawful entrapment. Continuing, the court instructed:

"If, on the other hand, the Jury should find that the accused had no previous intent or purpose to commit

---

**2.** White's testimony was contradicted by agent McDonnell, who stated that White said he had been buying narcotics from Nordeste. Gerald Osborne, on the other hand, testified that White was a supplier of narcotics and that White brought narcotics to Nordeste's home on one occasion.

any offense of the character here charged, and did so because he was induced or persuaded by some agent of the Government, then the prosecution seduced an *innocent person,* and the defense of unlawful entrapment is a good defense, and the Jury should acquit the Defendant." (Emphasis added.)

Nordeste argues, in effect, that the use of the words "innocent person" in this part of the instruction may have misled the jury into believing that the defense of entrapment is only available to one who is otherwise innocent. He calls attention to the concurring opinion of Mr. Justice Frankfurter in Sherman v. United States, 356 U.S. 369, 380, 78 S.Ct. 819, 2 L.Ed.2d 848, where the statement is made that courts refuse to convict an entrapped defendant, not because his conduct falls outside the proscription of the statute, but because "even if his guilt be admitted, the methods employed on behalf of the Government to bring about conviction cannot be countenanced." In this concurring opinion, reference is also made to the dissenting opinion of Mr. Justice Holmes, in Olmstead v. United States, 277 U.S. 438, 470, 48 S.Ct. 564, 575, 72 L.Ed. 944, where this oft-quoted statement appears:

"[F]or my part I think it a less evil that some criminals should escape than

that the government should play an ignoble part."

▆▆▆ While it is preferable to avoid use of the term "innocent person" in an instruction on entrapment, we do not believe that, in the context of this particular instruction, the term rendered the instruction erroneous. The concept of unlawful entrapment has always been thought of as safeguarding one who is innocent of any preconceived intent to commit the crime charged, while denying protection to one who has a criminal intent and is ready to grasp an opportunity to fulfill that intent.[3] We think the term was used in this sense in the instruction under consideration and that it was so understood by the jury.[4]

The instruction is not prejudicially erroneous in its use of the term "innocent person."

▆▆▆ Nordeste contends that the entrapment instruction is fatally defective in that it failed to apprise the jury that it was not merely inducement by the undercover narcotics agent, McDonnell, but inducement by the paid informant, White, which should be taken into account on the issue of entrapment.

At one point in the entrapment instruction reference is made to inducements or persuasion "by law enforcement officers." At other points the reference is to "Government agents" and

---

3. In Sorrells v. United States, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413, the court referred to unlawful entrapment as involving circumstances where the criminal design orginates with the officials of the government, and they implant "in the mind of an innocent person" the disposition to commit the alleged offense and induce its commission in order that they may prosecute. In Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848, the court stated that to determine whether entrapment has been established, a line must be drawn between the trap for the "unwary innocent" and the trap for the "unwary criminal." In Robison v. United States, 9 Cir., 379 F.2d 338, 343, this court stated that unlawful entrapment is shown where the accused was not a person predisposed

to commit the crime of which he stands convicted, but was "an otherwise innocent person seduced by Government agents so to do."

4. The indications are that, at the trial, Nordeste and his attorney also so understood the term, since, although informed of the instruction in advance, they made no objection then or after it was given. Under these circumstances we examine the instruction only for "plain error" under Rule 52(b), Federal Rules of Criminal Procedure. See Rule 30, Federal Rules of Criminal Procedure; Lopez v. United States, 373 U.S. 427, 436, 83 S.Ct. 1381, 10 L.Ed.2d 462; Reid v. United States, 9 Cir., 334 F.2d 915, 917; Herzog v. United States, 9 Cir., 235 F.2d 664, 666.

"agent of the Government." Obviously the terms were used interchangeably. Although the court did not expressly instruct that the paid informant, White, is to be regarded as an agent of the government, we think the jury must have understood this in view of all of the evidence which was introduced bearing upon the relationship between White and the government. Had Nordeste or his counsel had a different view at the time of the trial they would undoubtedly have asked for such an instruction.

In any event, Nordeste was not prejudiced by the failure to so instruct. The evidence indicates that on the three occasions dealt with in the indictment, White had nothing to do with the transaction, other than to introduce McDonnell to Nordeste on the first occasion, and to be present on all three occasions. On each of the three visits to Nordeste's home, it was McDonnell who requested White to accompany him. Accordingly, the jury could not have inferred from that evidence that White induced Nordeste to sell narcotics to McDonnell.

Our attention is not called to any other evidence, concerning those three transactions, which would have provided a basis for such an inference.

It is true, as Nordeste argues, that in considering the defense of entrapment, conduct of government agents prior to the transactions in question must also be taken into account. See Sherman v. United States, 356 U.S. 369, 374, 78 S.Ct. 819, 2 L.Ed.2d 848. But there is here no evidence of prior conduct on the part of White which could have led the jury to find that he had induced Nordeste to sell narcotics to McDonnell or any other government agent.[5]

The considerations discussed above lead us to conclude that the failure of the court to instruct, on its own motion,

that entrapment could be based upon the activities of White, did not constitute plain error.

Nordeste also challenges the entrapment instruction because it does not contain a statement allocating the burden of proof on the defense of entrapment. Calling attention to United States v. Sherman, 2 Cir., 200 F.2d 880, 882–883, Nordeste contends that the court should have instructed that, on the question of whether the government agent induced the accused to commit the offense, Nordeste had the burden of proof, and on the question of whether, if he was so induced, the accused was ready and willing without persuasion and awaiting any propitious opportunity to commit the offense, the Government had the burden of proof.

Instead of giving such an instruction as part of its charge on entrapment, the court, in the course of its over-all instructions, told the jury that Nordeste was presumed to be innocent until the contrary is proved; that in the case of a reasonable doubt, Nordeste was entitled to an acquittal; that the burden of proving the guilt of Nordeste rested upon the Government; that such burden of proof included the proof of every element of the offense; and that this burden never shifts to the defendant. The court further instructed that Nordeste had admitted doing the acts complained of and the only issue was whether he had been unlawfully entrapped.

In United States v. Landry, 7 Cir., 257 F.2d 425, the court held that, where the record presents a close question on the issue of entrapment, general instructions on burden of proof are not adequate and there should be a specific instruction relating to the defense of entrapment. See also, Notaro v. United States, 9 Cir., 363 F.2d 169, 176. In the case now before us, we do not consider that factual issue a close one and, in view of the fact that there was no request for

5. All that the record shows with regard to the relationship between White and Nordeste is the following: White had been at Nordeste's house on several occasions prior to April 1, 1965. One witness testified that, on one occasion (not necessarily prior to that date), White brought narcotics to Nordeste's home. Another witness testified that White had been buying narcotics from Nordeste.

such an instruction and there was no objection to the instructions given, we decline to invoke the "plain error" rule. See Lopez v. United States, 373 U.S. 427, 436, 83 S.Ct. 1381, 10 L.Ed.2d 462; Reid v. United States, 9 Cir., 334 F.2d 915, 917.

Moreover, in the case before us, the only issue was that of entrapment, so that the general instructions on burden of proof could only have had application to that issue.

The instructions given were more favorable to Nordeste than he asks for on the basis of United States v. Sherman, supra. It places the burden of proof upon the Government on all aspects of the entrapment issue. This is in accord with the view expressed in Notaro v. United States, supra, 363 F.2d at 175.

The instruction on entrapment is not prejudicially erroneous in any respect called to our attention by Nordeste.

Nordeste's final contention on this appeal is that the evidence is insufficient as a matter of law to show that he was ready and willing to sell narcotics should the opportunity present itself. In support of this argument, Nordeste asserts that the only evidence of willingness was the judicial notice taken of Nordeste's one prior narcotic conviction in 1950, some fifteen years before the sales involved at the trial.

In addition to Nordeste's past conviction, there was the testimony of White that, in his presence, Nordeste had sold narcotics to Gerald Osborne on at least three or four occasions shortly before the offenses charged in the indictment. Moreover, the testimony favorable to the Government, concerning the three transactions in question, indicates that Nordeste needed no persuasion to induce him to sell narcotics to McDonnell, and that he, in each instance, had the narcotics and container equipment on hand which enabled him to complete the sale on the spot. There was thus ample evidence warranting a jury finding that Nordeste was predisposed to sell narcotics should an occasion present itself.

Affirmed.