Alexander Ruben ESTRELLA, Defendant-Appellant,

v.

UNITED STATES of America, Plaintiff-Appellee.

No. 23375.

United States Court of Appeals, Ninth Circuit.

July 10, 1970.

398

Robert L. Maines (argued) of Mc-Cutchen, Doyle, Brown & Emerson, San Francisco, Cal., Alexander R. Estrella, San Pedro, Cal., for appellant.

Gregory E. Fischbach (argued) Asst. U. S. Atty., Robert L. Mayer, U. S. Atty., Theodore E. Orliss, Asst. U. S. Atty., Robt. L. Brosio, Chief, Criminal Division, Los Angeles, Cal., for appellee.

Before CHAMBERS, KOELSCH and TRASK, Circuit Judges.

TRASK, Circuit Judge:

Defendant, Estrella, appeals from a jury verdict of guilty rendered against him on six counts[1] arising from two sales of heroin made on June 17, and June 28, 1965, more than three years prior to his trial.[2] Both sales were made to an informant, Luna, who was apparently providing evidence of narcotics violations to federal officers to mitigate the effect of an indictment filed against him for a narcotics violation. The indictment against Luna was dismissed during June 1966.

While testifying that he remembered meeting the informant in May 1965, and that he had made the second sale on June 28, 1965, Estrella denied any recol-

lection of the sale on June 17, 1965. Estrella further stated that the informant had approached him between 10 and 50 times urging him to supply heroin to satisfy the informant's needs, and, on one occasion, had threatened to "blade" Estrella because he had no heroin to sell. Although the defendant and Luna were the only persons present when the alleged threat was made, Estrella testified that other people, including Luna's wife, were present both shortly before and shortly after the threat was made. None of these parties was called to testify.

In contrast to the defendant's testimony concerning entrapment, Luna testified that he had only seen Estrella four times, including the two meetings when the heroin sales were made, and that he had never threatened Estrella. Luna also stated the facts indicating that two sales had taken place. Two narcotics agents who observed both sales from a distance, but did not witness the actual transfers, substantially corroborated Luna's testimony concerning the sales.

On this evidence, the jury convicted Estrella on all counts and he was sentenced to five years on each count to begin and run concurrently.

Estrella raises two principal questions on his appeal: First, whether the delay between the commission of the crime and his prosecution violates his right to due process, or his right to a speedy and fair trial; and, second, whether the entrapment instruction submitted to the jury was correct.

A. Delay in Prosecution

    1. Failure to Raise the Issue in the Trial Court

The defendant did not raise the issue of delay during the proceedings before the trial court. This in spite of the fact that the government "laid bare" these constitutional issues in its trial memo-

1. Defendant was charged with four counts in violation of 21 U.S.C. § 174 (possession and sale of narcotics), and two counts in violation of 26 U.S.C. § 4705(a) (sale of narcotics without a Treasury order form).

2. The sales were made in June 1965; the arrest occurred sometime after May 13, 1968; the indictment was returned in July 1968, and the trial began in September 1968.

randum, Reply Brief for Defendant-Appellant at 11. Such failure usually and in this case did preclude the factual inquiry necessary to determine the circumstances relevant to that delay.

▮ As a threshold question, it is necessary to consider whether this failure during trial precludes consideration of the point on appeal. Benson v. United States, 402 F.2d 576 (9th Cir. 1968), dealt with a similar assertion that delay from the day the offense was committed to the day of the arrest deprived the defendant of both his Fifth and Sixth Amendment rights.[3] The record indicated that the agent purchasing narcotics from the defendant Benson did not arrest him at the time because the agent was making other purchases and an earlier arrest would have rendered the agent valueless for future narcotics work. *Id.* at 577. After disposing of the Sixth Amendment claim by holding it did not apply to pre-arrest delay because no formal proceedings had been initiated, the court responded to the Fifth Amendment claim. For these claims the court stated that the applicable statute of limitations supplies the period for judging whether a criminal prosecution is stale, and that:

> "[I]f there are special circumstances amounting to a denial of due process, that make a particular case an exception to this rule, the defendant should promptly bring the claim to the trial court's attention. If he fails to do so, the claim is no longer open to him, and cannot be raised for the first time on appeal." 402 F.2d at 580.

The clear holding of *Benson* forecloses consideration of defendant's Fifth Amendment due process claim for failure to indict him for three years after the commission of the crimes because the claim has been raised for the first time in this court and was not raised at trial.

▮ A similar line of authority precludes consideration of the Sixth Amendment claim when it has been raised for the first time on appeal. United States v. Walton, 411 F.2d 283, 286 (9th Cir. 1969); Benson v. United States, *supra*, 402 F.2d at 580–581 nn.9 & 10. Casting the claim as a request that the court exercise its general supervisory power to prevent unfairness also should not aid the defendant when he has failed to raise the question below. Where the error is plain, however, the issue could be reached on appeal.[4] Plain error in this context would have required that defendant establish a prima facie case for the exercise of the *Ross*[5] doctrine which was based upon the unfairness of allowing, after an undue delay, a conviction to be based upon the uncorroborated testimony of a single officer who testified from his notes made at the time of the alleged crime without independent recollection. Here, the informant testified from independent recollection, (R.T. at 87); recalled substantial details tending to show his credibility, and the informant's testimony was substantially corroborated. No case under *Ross* was made; no plain error allows review in this court when the issue was not raised in the trial court.

2. Delay Between the Alleged Crimes and the Filing of the Indictment

Assuming defendant is entitled to be heard now, he cannot prevail. Although there is some confusion in the cases regarding the difference between a Fifth Amendment claim, a Sixth Amendment claim, and a claim for fairness under the general supervisory power of the court, all three claims have distinguishing characteristics.[6]

---

3. *Benson*, 402 F.2d at 580, did not consider a claim that the general supervisory power of the court should be invoked to prevent unfairness due to delay, but specifically stated that defendant's claim, if at all valid, must rest upon a violation of the Fifth Amendment.

4. Fed.R.Crim.P. 52(b).

5. Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965).

6. The Fifth Amendment may apply to delay between the date of the commission of the offense and the date of the filing

**400**

Defendant asserts two types of prejudice arose resulting in denial of due process to him: namely, that delay prevented him from testifying to clearly establish the facts relating to his entrapment defense, and that delay deprived him of the ability to effectively cross-examine the principal witness against him about the details of the first sale, June 17, 1965.

■ The applicable test for evaluating a Fifth Amendment claim of delay was stated in United States v. Walton, 411 F.2d 283 (9th Cir. 1969). That case involved a claim that undue delay had unintentionally deprived the defendant of the testimony of a witness, a government informant. Walton asserted that if the testimony of the missing witness were in evidence then there was a *reasonable possibility* that the jury could have found that the government did not prove the absence of persuasion (illegal entrapment) beyond a reasonable doubt. The *Walton* test may be restated: Where there is a reasonable possibility that the jury could have reached a different result by considering the asserted evidence foreclosed by delay, the defendant has been denied due process.

As a preliminary matter in the case at hand, it becomes necessary to state that the defendant was not believed by the jury. The only evidence on entrapment was the testimony by the defendant and the statement by the informant. To have reached the conclusion that the defendant was not entrapped, the jury must have disbelieved the defendant, and believed the informant.[7]

■ Examining the prejudice asserted by Estrella it becomes apparent that he had suffered no harm. Estrella testified to facts occurring both before and after the alleged entrapment, so there is every reason to assume that he gave every bit of testimony he had to offer. Defendant is asking this court to overturn the jury's verdict because he disagrees with the jury's determination of his credibility. That disagreement does not meet the *Walton* requirement. Similarly, the defendant claims he was unable to effectively cross-examine the principal witness for the prosecution. In light of the jury's finding on the issue of entrapment, and the fact that the informer testified in detail about the events of June 17, 1965, and that the informant's story was substantially corroborated by two narcotics agents who personally witnessed the scene, it appears highly improbable that anything Estrella could have testified to would have persuaded the jury to acquit him and disbelieve the testimony of the others. Nor has Estrella presented evidence or a theory which would satisfy *Walton* and compel a rehearing on the issue of prejudice.

### 3. Right to a Speedy Trial

■ The Sixth Amendment claim does not arise until formal proceedings have been had and the defendant is required to answer in court.[8] Assuming the

---

7. Defense counsel's closing argument clearly recognized that the credibility of the defendant was crucial to his acquittal:
"Now I will admit to you that if you believe Mr. Luna's testimony, and all of it, including the facts that he didn't really ask him for the heroin and he didn't really threaten him and he wasn't really interested in buying heroin from Mr. Estrella, if you believe all of that, I will admit that you have a case of lawful entrapment and you should acquit the defendant." R.T. at 209.

8. The Second Circuit applies the Sixth Amendment to pre-arrest delay. United States v. Capaldo, 402 F.2d 821, 823 (2d

of the complaint or of the arrest. United States v. Walton, 411 F.2d 283 (9th Cir. 1969); Benson v. United States, 402 F. 2d 576 (9th Cir. 1968); Woody v. United States, 125 U.S.App.D.C. 192, 370 F.2d 214 (1966). The Sixth Amendment claim does not arise until a formal complaint is lodged against the defendant. *Benson, supra*; Lucas v. United States, 363 F.2d 500 (9th Cir. 1966). A very limited doctrine based on a claim for fairness is set forth in Ross v. United States, 121 U.S. App.D.C. 233, 349 F.2d 210 (D.C.Cir. 1965), which spans the period from the date of the offense to the date of arrest and probably to the date of trial.

right attached earlier, the delay must have been oppressive or prejudicial. The discussion concerning the due process claim indicates that the defendant suffered no prejudice. Government counsel at oral argument asserted that the defendant was "unlocatable" until the time he committed himself to a hospital for the treatment of his alcoholism. While one of the officers testified that he made no attempt to arrest Estrella on the day of the second sale, (R.T. at 134), the testimony of the informant is that Estrella disappeared when an acquaintance of his was arrested on similar narcotics charges (R.T. at 100, 107, 121). There is no indication that the delay was harmful under these circumstances. While the exact meaning of "oppressive" delay is unclear, Estrella has not asserted facts even tending to show oppression.

### 4. Delay Violated General Considerations of Unfairness

The *Ross* [9] doctrine was established to handle a very limited situation—conviction by testimony of a single officer, testifying from a notebook without independent recollection and without corroboration. This case presents no reason to expand the doctrine and it does not meet the *Ross* criteria. Here the informant testified from independent recollection and his testimony was substantially corroborated. The *Ross* doctrine does not apply.

### 5. Conclusion

Defendant Estrella presents no argument for reversal or remand of his conviction based upon delay. He did not raise the issue below to allow the trial judge to rule upon his claim, nor does it appear that if he had presented his claim below it would have resulted in anything but a conviction. There is no error.

Cir. 1968), cert. denied, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969). The Ninth Circuit has not applied the Amendment to pre-arrest delay, but has limited it to delay following the initiation of formal prosecution. Benson v. United States, 402 F.2d 576, 579 (9th Cir. 1968).

**B. Entrapment Instruction**

 No objection to the instruction was made at trial: The consideration of the sufficiency of the instruction is foreclosed unless defendant demonstrates plain error. Nordeste v. United States, 393 F.2d 335, 339–340 (9th Cir.) cert. denied, 393 U.S. 878, 89 S.Ct. 178, 21 L.Ed.2d 151 (1968). He has not demonstrated such error. It was not error to submit the issue of entrapment to the jury.[10]

The judgment is affirmed.

9. Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965).

10. Erwing v. United States, 394 F.2d 829 (9th Cir. 1968); United States v. Dehar, 388 F.2d 430 (2 Cir. 1968).