**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard W. HAUFF, Defendant-
Appellant.**

No. 71–1296.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1972.

Decided May 23, 1972.

Terence F. MacCarthy, Director, Federal Defender Program, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., John Peter Lulinski, Richard M. Williams, Michael P. Siavelis, Asst. U. S. Attys., Chicago, Ill., for appellee.

Shiro Kashiwa, Asst. Atty. Gen., Department of Justice, Washington, D. C., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and HAMLEY * and PELL, Circuit Judges.

HAMLEY, Circuit Judge.

Richard W. Hauff appeals from a judgment, entered after a bench trial, convicting him of willfully failing to file federal income tax returns for calendar

---

* The Honorable Frederick G. Hamley, United States Circuit Judge for the Ninth Judicial Circuit, sitting by designation.

years 1963 (count 1) and 1964 (count 2), in violation of 26 U.S.C. § 7203.

Hauff's principal argument on appeal is that the trial court erred in denying his motion to dismiss the information because of assertedly unreasonable, prejudicial, intentional and purposeful delay by the Government in filing the information and in bringing him to trial.

The offenses were complete on April 15, 1964 (count 1), and April 15, 1965 (count 2), when federal tax returns for calendar years 1963 and 1964, respectively, were due. The United States Attorney filed the information on April 13, 1970. With regard to count 1 this was just within the six-year statute of limitations provided by 26 U.S.C. § 6531(4). Defendant had been incarcerated on other convictions since at least November, 1968. He makes no contention that he was an "accused" person in the present case until the date of filing of the information. Hauff was brought to trial on January 6, 1971, just short of nine months after the information was filed.

In urging that the trial court erred in denying his motion to dismiss the information, Hauff invokes the Speedy Trial Clause of the Sixth Amendment, the Due Process Clause of the Fifth Amendment, and Rule 48(b), Federal Rules of Criminal Procedure, authorizing a court to dismiss a prosecution for unnecessary delay. We will consider, seriatim, the possible application of each of these provisions under the circumstances of this case.

■ The Speedy Trial Clause of the Sixth Amendment is not applicable to the time span between the commission of the offense and the arrest of the offender or the filing of an indictment or information against him. That constitutional guarantee is activated only when a criminal prosecution has begun by the filing of an indictment or information or a prior arrest of the offender on the same charge. United States v. Marion, 404 U.S. 307, 313, 321, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

With regard to the lapse of time between the accusation and the trial, the Speedy Trial Clause guarantees to a criminal defendant:

". . . that the Government will move with the dispatch which is appropriate to assure him an early and proper disposition of the charges against him. '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10 [,79 S.Ct. 991, 997, 3 L.Ed.2d 1041] (1959)." United States v. Marion, *supra*, at 313, 92 S.Ct. at 459.

The purpose to be served by the speedy trial guarantee is stated as follows in United States, v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966):

"This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself."

■ In determining whether there has been an unconstitutional deprivation of a speedy trial, the essential inquiry is whether, in view of all of the circumstances of the case, the objectives of this constitutional guarantee have been substantially preserved or defeated. *See* United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

As stated above, the information was filed on April 13, 1970. Between then and June 15, 1970, an attorney was appointed to represent Hauff, he was arraigned and pleaded not guilty, and most of the issues in connection with defendant's extensive pretrial discovery were formulated and resolved. A pretrial conference was held on June 24, 1970, and the cause was continued to July 1, 1970 for trial. On June 25, 1970, on motion of the Government, the cause was reset for trial from July 1 to Sep-

tember 9, 1970. The record does not indicate the reason for this continuance or that Hauff interposed any objection.

It apparently was not contemplated that the trial would actually commence on September 9, 1970, for, at the outset of the proceedings on that day, the court inquired: "When. does somebody want it to go to trial?" Government counsel then asked that the case be set for trial on October 19, 1970. The reasons given for asking for this date were that new Government counsel had just recently been assigned the case and that defendant was scheduled for trial before another judge on September 28, 1970, in another criminal matter. In the colloquy which followed, it was brought out that Hauff was then in the Federal Penitentiary at Atlanta, Georgia.

Counsel for Hauff made no objection to the October 19th trial date, nor did he indicate that he would be ready for trial before that date. When the case came before the court on October 19, 1970, the court was told that Hauff had, two weeks previously, been convicted on other charges concerning which posttrial motions were still pending, with sentencing set for October 30, 1970. Government. counsel stated that he was scheduled to try other unrelated cases on October 26, and November 2, 1970, and that he had a vacation scheduled for the middle of November. Government counsel stated that he would probably be free to try this case on December 1 or 2, 1970.

The court then observed that it had scheduled the whole month of December for an antitrust case. The court was informed that Hauff was still incarcerated. Counsel for the Government then agreed to the court's suggestion of a November 24, 1970 trial date. Again

counsel for Hauff offered no objection to the continuance.

The cause was set for a status report hearing on October 30, 1970, concerning unresolved pretrial discovery matters. On October 23, 1970, the Government filed its response to defendant's pretrial discovery requests which had not yet been met. At the October 30, 1970 status hearing the final pretrial matters were disposed of. At that time the November 24, 1970 trial date seemed to be firm.

On November 24, 1970, the cause was continued to January 4, 1971, for trial. The record before us does not indicate who requested the continuance, the reasons therefor, or whether Hauff voiced any objection thereto. The trial actually commenced on January 6, 1971. It was at the outset of the trial that Hauff first objected to the continuances which had been granted, doing so by filing his motion to dismiss the information.

■■ Applying the objectives of the Speedy Trial Clause to the circumstances described above we hold that the trial court did not err in ruling that the Speedy Trial Clause did not require dismissal of the information. Throughout the entire period from the filing of the information to the date of trial, Hauff made no objection to the continuances, but concerned himself only with the completion of pretrial discovery.[1] No showing of prejudice with reference to this period of time was made. The delay did not inconvenience or place undue strain upon Hauff as he was already incarcerated under previous convictions.[2] The reasons for continuances, advanced by counsel for the Government, reveal no purpose to prejudice or oppress Hauff, and Hauff makes no such contention.

We turn then to defendant's second ground for asserting error in the denial

1. The right to a speedy trial is the defendant's personal right "and is deemed waived if not promptly asserted." United States v. McCorkle, 413 F.2d 307, 309 (7th Cir. 1969) ; United States v. Hephner, 410 F.2d 930, 932 (7th Cir. 1969).

2. Hauff had been convicted in the United States District Court for the Northern District of Illinois on October 21, 1966, for conspiracy to violate the Internal Revenue laws, on June 20, 1967, for wire fraud, and on October 7, 1970, for mail fraud.

of the motion to dismiss the information—namely the Due Process Clause of the Fifth Amendment.

The applicable statute of limitations (here six years under 26 U.S.C. § 6531) is ". . . the primary guarantee against bringing overly stale criminal charges." United States v. Ewell, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966), quoted with approval in United States v. Marion, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In this case the statute of limitations had not expired when the information was filed.

The *Marion* Court further noted, however, that ". . . the statute of limitations does not fully define the [defendants'] rights with respect to the events occurring prior to indictment." 404 U.S. 324, 92 S.Ct. 465. And this court has stated that a delay less than the period of the statute of limitations might be so unreasonable, and the resulting prejudice to the defendant so great, that in some circumstances due process would be denied and relief under the Fifth Amendment should be afforded. United States v. Bornstein, 447 F.2d 742, 745 (7th Cir. 1971); United States v. Deloney, 389 F.2d 324 (7th Cir. 1968).

█ In *Marion,* the Court made it clear, however, that actual prejudice resulting from delay, standing alone, is not a *per se* deprivation of due process. The Court pointed out that actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay, and observed that ". . . no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecu-

tion." (404 U.S., at 324–325, 92 S.Ct., at 465) The Court added:

"To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." (404 U.S., at 325, 92 S.Ct., at 465–466)

██ The cases cited above establish that in order to obtain relief under the Due Process Clause the defendant must show, at least, that the delay has redounded to his substantial prejudice. Whether he was prejudiced is to be determined in the light of the events at trial and the proof which was adduced. *See* United States v. Bornstein, *supra,* 447 F.2d at 745–746; United States v. Lee, 413 F.2d 910, 913–914 (7th Cir. 1969).[3]

In the present case the United States Attorney charged in the first count of the information that Hauff should have filed a federal income tax return for 1963 because he had received a gross income of thirty-five thousand dollars in that year. The United States Attorney made similar charges in count two concerning 1964 because of Hauff's alleged gross income of twenty-one thousand dollars in that year. At trial, the Government sought to prove that, as a result of a fraudulent scheme devised by Hauff and his associates, one August Circella had in 1963 and 1964 made payments in the indicated amounts to Hauff's associates, who turned the money over to Hauff.

Hauff's defense to count one was that he did not remember defrauding or receiving payments made by Circella in 1963. While defendant admitted at trial

---

3. Defendant contends that both pre- and post-indictment delay should be considered in resolving his due process claim. He also points out that although Fifth Amendment claims usually require a specific showing of prejudice, ". . . at times a procedure . . . involves such a probability that prejudice will result that it is deemed inherently lacking in due process," (Estes v. Texas, 381 U.S. 532,

542–543, 85 S.Ct. 1628, 1633, 14 L.Ed. 2d 543 (1965)), and he urges that the delay in the present case may be deemed inherently violative of due process without specific proof of prejudice. We agree that both pre- and post-trial delays are relevant in deciding the due process issue; but we are not persuaded that prejudice violative of due process is inherent in a delayed trial.

the 1964 fraud and receipt of payments which formed the basis of the second count, he defended against that count on the ground that, in the same year, he had made arrangements to pay back the money taken, had actually paid back almost twenty thousand dollars for which Circella had given him a receipt, and had given promissory notes to Circella for the balance.

The trial court, in finding Hauff guilty, rejected these defenses, and Hauff now argues that the defenses were impaired by the Government's delay in that: (1) Government witnesses were unable properly and adequately to recall salient facts; (2) Hauff's own memory and recall of events was inadequate; (3) Hauff's papers and records were destroyed by fire in 1968, through no fault of his own; (4) records and documents of witnesses were unavailable; (5) a defense witness had died during the period of delay. Hauff contends that these claimed prejudicial factors establish a denial of due process under the rules discussed above.

As to count one, relating to defendant's fraud and receipt of payments in 1963 from Circella, the evidence in support of the Government's case was overwhelming, and much of it was documentary. In addition, Hauff's principal accomplice, Bevery Hanel, was a Government witness and divulged the whole scheme. The Government's most damaging evidence was a fifteen thousand dollar cashier's check, dated October 24, 1963, which Circella gave to Hauff's accomplice, and later cashed for defendant in November, 1963.

Moreover, the possible prejudice on the 1963 phase of the case which Hauff claims resulted from the factors listed above was minor and uncertain at most. The claimed defense witness who died

had been Circella's attorney, and Hauff claims only that the witness would have testified that Circella did not inform him of the 1963 fraud. The claimed testimony would thus have established, at best, only that Circella's attorney had not been told of the 1963 fraud, and not that no fraud or payments to Hauff had taken place.[4]

■ In view of the overwhelming documentary and testimonial evidence of Hauff's 1963 income, coupled with the speculative and ineffective nature of the evidence he claims was unavailable because of the Government's delay, we conclude that Hauff has failed to show any prejudice violative of due process with respect to his conviction on count one of the information.

Defendant also argues that the asserted prejudicial factors listed above made it impossible for him to prove that he had agreed in 1964 to repay to Circella all the money taken by fraud, thus hampering his defense to the second count of the information. Assuming *arguendo* that Hauff could have obtained the evidence he now claims was made unavailable by Government delay, and further assuming that the trial court would have accepted the claimed evidence as true, we nevertheless conclude that the unavailability of the evidence could not have prejudiced the defendant in the context of this case, because his asserted defense was insufficient as a matter of law.

■ It is established that unlawful gains, including those obtained by fraud, may constitute taxable income under the "claim of right" theory. Rutkin v. United States, 343 U.S. 130, 137–138, 72 S.Ct. 50, 96 L.Ed. 611 (1952). *See* James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). A federal income tax return must normally be made on such income in the year it is

4. We also note that Hauff's attorney, at trial, evinced a lack of knowledge as to what Circella's attorney would have said on the witness stand; and that even if available Circella's attorney might have refused or been forbidden by Circella to repeat what Circella had told him about the 1963 fraud and payments, on the basis of the attorney-client privilege. It appears in the record that Circella had instructed his attorney to invoke that privilege in an earlier trial involving Hauff as a defendant.

received, even though the recipient may later be required to restore its equivalent. *See* James v. United States, *supra*, 366 U.S. at 219, 81 S.Ct. 1052; North American Oil v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197 (1932). Under these rules, defendant's fraudulently-obtained 1964 gains would require that he make a return for that year, unless the unavailable evidence of his 1964 agreement to repay Circella would have excused him from filing a return.

It has been held that no return need be made on income by a taxpayer where: (1) the income was received under claim of right as a consequence of an honest mistake; (2) the taxpayer's abandonment of his claim of right was unquestionably *bona fide*, and occurred in the same year in which the income was received; and (3) the good faith of the taxpayer in abandoning his claim to the income was conclusively established by his full repayment of the gains in a later year. United States v. Merrill, 211 F.2d 297, 303–304 (9th Cir. 1954).

■ We are convinced, however, that a different result should obtain in the present case. Here, the defendant admittedly received his 1964 gains as the result of deliberate fraud. And although his asserted "lost" evidence (which we accept *arguendo* as extant and true) would show that he agreed in the same year to repay the money he had received, his good faith is nowhere apparent, especially as he has never claimed that he paid back to Circella more than a portion of the unlawful gain.

It follows that the asserted evidence of the 1964 agreement to repay Circella

would not have established a valid defense to Hauff's failure to file a return for 1964, and we therefore conclude that he was not prejudiced by the unavailability of that asserted evidence.[5]

It is true that, due to the time span between the occurrences and the trial, some of the Government witnesses were unable to remember details, especially while under cross-examination by Hauff's counsel. But it is difficult to see how defendant could have been substantially prejudiced by this undermining of Government witnesses. Defendant had the assistance of detailed pretrial discovery, including a statement pursuant to 18 U.S.C. § 3500 (Jencks Act).

■ Defendant also argues that prejudice can be found in the possibility that: (1) had this case been disposed of more expeditiously, defendant's sentence may, at least in part, have run concurrently with his earlier sentences imposed for other crimes, (2) the pendency of this case may have adversely affected his potential for parole under the earlier convictions, and (3) his ability to defend himself was impaired by his incarceration, a status he would not have suffered were this case prosecuted more expeditiously. In support of these contentions, he cites Smith v. Hooey, 393 U.S. 374, 378, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

The argument that, had Hauff been tried at an earlier date, he possibly could have received a sentence concurrent with those imposed on prior convictions, is too speculative for serious consideration. Likewise, the contention that the pendency of this case may have adversely affected Hauff's potential for

---

5. We do not understand Hauff to argue that the claimed 1964 agreement to repay Circella, if proven, would have negated the element of willfulness required to convict Hauff under 26 U.S.C. § 7203. In any event, such an argument would be without merit.

To establish a defense based on lack of willfulness in the context of the present case, the defendant would be required to allege a *bona fide* misunderstanding as

to his duty to make a return. *See* United States v. Matosky, 421 F.2d 410, 413 (7th Cir. 1970). At no time during the trial did either Hauff or his attorney represent that Hauff misunderstood his duty to file a return. The only indication of such misunderstanding was made at sentencing, after Hauff had been convicted, and it was then too late to raise the defense on which no evidence had been introduced.

parole seems almost fanciful, having in view his prior criminal record. The argument that Hauff's ability to defend himself was impaired by his incarceration under the prior offenses, and that he would not have suffered this impairment had the trial been substantially earlier, is likewise without merit. The Government was faced with making an extensive investigation and instituting four criminal proceedings against Hauff. One of the trials had to be last and we perceive no reason why the Government should be faulted because of the order of trials it chose.

Apart from the absence of substantial actual prejudice, we find in the record no indication that the delay in bringing Hauff to trial was motivated by any ulterior motive on the part of the Government. As indicated in footnote 2, a good part of the time span in question was utilized by the Government in trying and convicting Hauff on three other federal charges. Presumably, all four criminal proceedings had to be preceded by extensive investigations. Defendant has offered no factual basis for a finding that the Government delayed the trial for an improper purpose. Finally, the trial court did not rule on the motion to dismiss until the end of the trial, at a time when it was best able to determine whether there had been prejudice or overreaching. We are not convinced that the trial court erred in holding that due process did not require dismissal of the information.

As indicated above, Hauff also relies upon Rule 48(b), Federal Rules of Criminal Procedure, authorizing a court to dismiss a prosecution for unnecessary delay.

■ As in the case of the Speedy Trial Clause of the Sixth Amendment, Rule 48(b) is limited in its application to post-arrest delays. United States v. Marion, 404 U.S. 307, 319, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The circumstances considered herein in rejecting Hauff's speedy trial argument likewise call for rejection of this Rule 48(b) contention.

■ Hauff's remaining argument on this appeal is that the district court committed reversible error in denying his motion requesting the Government to acknowledge or, in the alternative, deny the existence of any electronic eavesdropping of defendant or his premises.

The motion in question was filed on May 21, 1970. Over one month prior thereto, on April 13, 1970, which was the same day that the information was filed herein, the Government filed in the mail fraud case against defendant a letter, dated January 28, 1970, from the Department of Justice to the United States Attorney at Chicago, dealing with electronic surveillance of Hauff. In this letter it is stated that a review of the Department of Justice files disclosed no information indicating that conversations of Hauff were at any time overheard by electronic surveillance or that premises known to be owned, leased or licensed by Hauff were covered by electronic surveillance by the Federal Bureau of Investigation. This letter further advised that Hauff had never been subjected to electronic surveillance by the Internal Revenue Service.

After leave of court was granted the Government to file this letter in the mail fraud case, Hauff testified therein concerning his proprietary interest in five specific premises. The court then ordered the Government to ascertain whether those premises had been subjected to electronic eavesdropping. On May 22, 1970, the day after Hauff's motion in the case now before us, a letter dated May 20, 1970, from the Department of Justice to the United States Attorney at Chicago, was filed in the mail fraud case. This letter advised that neither the Federal Bureau of Investigation nor the Internal Revenue Service maintained any electronic surveillance of any of these five premises.

The trial court in the present case, upon being advised of these circum-

stances, denied Hauff's motion for a statement as to electronic surveillance, ruling that the motion was "earlier adjudicated." In our opinion the Government adequately apprised Hauff of the extent of electronic eavesdropping, and the trial court did not err in so ruling.

Affirmed.