**UNITED STATES of America,**
**Appellee,**

v.

**George D. ANDROS, Appellant.**

**No. 72–2967.**

United States Court of Appeals,
Ninth Circuit.

Aug. 20, 1973.

Rehearing Denied Sept. 12, 1973.

**532**

Nathan Cohn (argued), San Francisco, Cal., for appellant.

Robert E. Lindsay (argued), Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., Jack O'Donnell, Sp. Atty., Dept. of Justice, Meyer T. Rothwacks, John P. Burke, Tax Div., Dept. of Justice, Washington, D. C., for appellee.

## OPINION

Before MERRILL and ELY, Circuit Judges, and MURPHY, District Judge.*

* Honorable Thomas F. Murphy, Senior United States District Judge, Southern

MURPHY, District Judge.

Appellant appeals from a judgment of conviction in the Northern District of California on an information charging him with the wilful failure to pay $7,501.20 of income taxes in violation of 26 U.S.C. § 7203.

He presents four issues: (1) the statute of limitations, (2) the denial of a speedy trial and the failure of due process under the Sixth and Fifth Amendments, (3) the Government's failure to corroborate his admissions, and (4) the failure of the Government to prove his guilt beyond a reasonable doubt.

Finding all without merit, we affirm.

The normal period of limitations for prosecution of offenses under the Internal Revenue laws is three years next after the commission of the offense, except that the limitation period is six years for a number of offenses, including "for the offense of wilfully failing to pay any tax * * * at the time or times required by law or regulations." 26 U.S.C. § 6531(4). The information herein was filed on April 7, 1972 and charged that appellant, on or about July 16, 1966, wilfully failed to pay income taxes which had been assessed against him on April 8, 1966 for the calendar years 1962, 1963 and 1964.

Appellant's argument that the statute runs from the time (March 25, 1966) he received Form L–15 informing him that a bill for the tax deficiency would be sent him, is misplaced. At that time no crime was committed. The period of limitation begins to run not when the taxes are assessed or when payment is demanded, but rather when the failure to pay the tax becomes wilful —an essential element of the crime. *Cf.*, Arnold v. United States, 75 F.2d 144, 145–146 (9th Cir. 1937); Wiggins v. United States, 64 F.2d 950 (9th Cir.), cert. denied, 290 U.S. 657, 54 S.Ct. 72, 78 L.Ed. 569 (1933); Capone v. United States, 51 F.2d 609, 616, 617 (7th Cir.),

District of New York, sitting by designation.

cert. denied, 284 U.S. 669, 52 S.Ct. 44, 76 L.Ed. 566 (1931). The crime charged was alleged to have been committed on or about July 16, 1966 when appellant wilfully failed to pay the tax. The information was filed three months before the six-year limitation period expired. The evidence at trial showed that on or about July 16, 1966 appellant had more than sufficient funds, and wilfully failed to pay the taxes assessed.

His second argument, raised for the first time on appeal, is that because of the delay between the date of the offense and the filing of the information, his rights under the Due Process Clause of the Fifth Amendment, and to a speedy trial under the Sixth Amendment, were prejudiced.

██ United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), disposes of the Sixth Amendment argument. *Marion* held that the guarantee of a speedy trial is applicable only after one is indicted, or informed against, or held to answer criminal charges. 404 U.S. at 313, 321, 92 S.Ct. 455. See, too, Judge Hamley's perceptive opinion in United States v. Hauff, 461 F.2d 1061 (7th Cir.), cert. denied, 409 U.S. 873, 93 S.Ct. 203, 34 L.Ed.2d 124 (1972). Appellant's three-day trial commenced on October 10, 1972, six months after the information was filed.

██ *Marion* also suggests that the Due Process Clause of the Fifth Amendment requires dismissal of an indictment or information when it is shown at trial that the preindictment or information delay caused substantial prejudice to appellant's right to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. 404 U.S. at 324, 92 S.Ct. 455. However, Benson v. United States, 402 F.2d 576 (9th Cir. 1968), forecloses consideration of the Fifth Amendment claim because appellant failed to raise such claim at trial. Nevertheless, where the failure to raise the claim amounts to plain error (Rule 52(b), Fed.R.Crim.Proc.), the issue must be considered on appeal. Es-

trella v. United States, 429 F.2d 397, 399 (9th Cir. 1970), cert. denied, 400 U.S. 1011, 91 S.Ct. 575, 27 L.Ed.2d 624 (1971).

In order to establish his claim under the Due Process Clause, the appellant must show that the delay between the commission of the crime and the filing of the information has redounded to his actual prejudice. Whether appellant was actually prejudiced must be determined by the proof presented at trial. *Hauff, supra*, 461 F.2d, at 1065. The only evidence at trial (defendant did not testify or offer any witnesses) on this issue was that a man named Michael Guerra, a/k/a Bob Mitchell, had died— when he died, or what he would have testified to, remains a mystery.

We would ordinarily consider whether there was a possibility that the jury could have reached a different result by considering what Guerra and other unnamed witnesses might have testified to with regard to the funds in appellant's possession as a result of his "winning ticket," Estrella v. United States, *supra*; United States v. Walton, 411 F.2d 283 (9th Cir. 1969); however, this would be mere speculation, since we have nothing in the record to go on. Moreover, there is no evidence that the delay was a purposeful device of the Government to gain a tactical advantage. Also, the mere allegation in appellant's brief that the delay dimmed his memory does not show actual prejudice.

His third argument is even less substantial. Appellant's claim is that there was insufficient corroboration to establish defendant's admissions of his interest in the winning ticket. We hold to the contrary. There was ample substantial independent evidence connecting the defendant with the winning ticket.

██ Lastly, appellant argues that the Government failed in its burden to prove his guilt beyond a reasonable doubt.

██ To establish the offense of a wilful failure to pay the taxes assessed, the Government was required to prove that the financial circumstances of the tax-

payer were such that, on or about July 16, 1966, the taxpayer possessed sufficient funds to be able to meet his legal obligation to the Government and that he voluntarily and intentionally did not pay such taxes. The requirement of wilfulness connotes "bad faith or evil intent" or "evil motive and want of justification in view of all the financial circumstances of the taxpayer." See, United States v. Bishop, 412 U.S. 346, 93 S. Ct. 2008, 2013, 36 L.Ed.2d 941 (1973).

Accepting the facts most favorable to the Government as we must (United States v. Glasser, 315 U.S. 60, 80, 62 S. Ct. 457, 86 L.Ed. 680 (1942)), the proof at trial showed that defendant had, by his own admission, $20,000 in cash as a result of a win on a "5–10" wager on July 16, 1966. He had previously agreed to an assessment for deficiencies in income taxes that amounted to $7,501.20 for the years 1962, 1963 and 1964. Demands for payment were sent to him about three months before the July 16th win.

The Government proved that, by defendant's admission, $10,000 of the $20,000 win was deposited by him under a fictitious name on July 18, 1966, and offered bank records to corroborate. It proved that commencing after that date in the year 1966 and also in 1967, defendant made many bank deposits in different banks totaling over $600,000, and purchased $200,000 worth of cashier's checks and $40,000 worth of "5–10" tickets.

The defense offered no testimony, and his counsel attempted, by cross-examination, to prove in effect that the defendant was insolvent at all times after July 16th because he owed vast sums of money; that he was kiting checks; and that he even had to mortgage his mother's home and had to borrow innumerable sums from other people.

The trouble with this "proof" was that it was not proved. With regard to mortgaging his mother's home,[1] it all came from the "testimony" of defendant's counsel on cross-examination, to which he never received a concurring response. With regard to check kiting this, too, only came from counsel's questions and unsworn extra-judicial statements of the defendant during the course of a number of pretrial conferences with Treasury Agents.

In sum, the evidence at trial showed the defendant's guilt beyond any doubt.

ELY, Circuit Judge (dissenting):

I respectfully dissent. In my opinion, the prosecution's evidence was insufficient to establish, beyond all reasonable doubt, Andro's guilt of the offense in question.

As early as March 25, 1966, Andros was mailed a letter advising him of the Government's belief that an income tax deficiency was due and had been assessed. The information was filed on April 7, 1972. It charged, in effect, that Andros had willfully failed to pay the taxes on July 16, 1966. The Government apparently specified the July 16, 1966, date because on that day Andros had won $20,000 from a so-called "5–10" wager on horseracing. The prosecution had also learned that two days thereafter Andros had opened a bank account under an assumed name and deposited the sum of $10,000 therein. As to the law applicable to the offense with which Andros was charged, I quote from the Government's brief as follows:

"To establish the offense of a willful failure to pay a tax, in violation of Section 7203 of the Internal Revenue Code of 1954, the Government must prove that the accused possessed specific wrongful intent—the purpose to disobey—at the time he did not pay the tax. See Spies v. United States, 317 U.S. 492, 497 [63 S.Ct. 364, 87 L. Ed. 418] (1943); United States v. Palermo, 259 F.2d 872, 882 (C.A.3, 1958); Wilson v. United States, 250 F.2d 312 (C.A.9, 1957); United States v. Goodman, 190 F.Supp. 847,

---

1. How does one mortgage another's property?

851–852 (N.D.Ill., 1961). The element of willfulness must include some element of evil motive and want of justification in view of all the financial circumstances of the taxpayer. Spies v. United States, *supra*, [317 U.S.,] p. 498 [63 S.Ct. 364]. Mere laxity, careless disregard of the duty imposed by law, or even gross negligence, unattended by evil motive are not probative of the element of willfulness. United States v. Palermo, *supra*, 259 F.2d, p. 882." (Footnote omitted.)

I am convinced that the Government did not carry its burden in respect to one element of the offense, i. e., that on July 16, 1966, the financial circumstances of Andros were such that he possessed readily available funds with which to pay his obligations to the Government. Andros offered no evidence in his own defense, but through the cross-examination of prosecution witnesses, it was established that Andros was a gambler, that he had habitually followed the practice of "kiting" checks, that he was overdrawn in one of his bank accounts to the extent of $27,000, overdrawn in other bank accounts to the extent of $35,000, indebted to the extent of $9,100 because of his check kiting activity, indebted to one Alessio in the sum of $23,500, and indebted to a horse racing enterprise, Bay Meadows Race Track, in the amount of $15,000. There was also evidence of other debts owed by Andros, including one of $30,000 that arose from a loan from his mother and which was evidenced by a mortgage. The Government replies that most of Andros' debts were incurred after July 16, 1966, but it concedes that Andros' obligation to Bay

Meadows Race Track existed on that date.[1] It argues, however, that there was no evidence that appellant "was being pressed for payment" of this obligation. This argument taxes my credulity. One need have no special expertise in order to recognize that a debt owed by one gambler to another is a "pressing" obligation.

Having itself established that Andros, on July 16, 1966, owed more money to others that the amount which was then in his possession, the Government did not, and could not, prove beyond a reasonable doubt that Andros was on that date financially able to pay the taxes in question.

Accordingly, I would reverse.

1. This concession, as I interpret it, appears on page 28 of the Government's brief. Also on that page is the admission that evidence as to Andros' "check kiting" was presented through the testimony of one Maiorana. As to this, the Government's brief continues, "In fact, however, this activity only resulted in a $9100 debt . . . . ." Finally, the Government, on the same page 28, states: "While there was evidence of a large debt owed to Bay Meadows Race Track . . . . ."

and "the evidence established that appellant made but one $1,000 payment on this debt during the relevant period of time charged." In the light of this, I challenge the majority's unqualified assertion that the indebtedness of Andros "was not proved."

I cannot believe that investigators for the Internal Revenue Service were either so inept or so negligent that their verification of Andros' heavy indebtedness was untrustworthy.