**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeffrey A. BALLEK, Defendant–
Appellant.**

No. 97–30326.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 18, 1998.

Decided March 11, 1999.

872

Carlton F. Gunn, Assistant Federal Public Defender, Anchorage, Alaska, for the defendant-appellant.

Stephan A. Collins, Assistant United States Attorney, Anchorage, Alaska, for the plaintiff-appellee.

Before: ALDISERT,* WALLACE and KOZINSKI, Circuit Judges.

* The Honorable Ruggero J. Aldisert, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

KOZINSKI, Circuit Judge.

The district court found defendant guilty of willfully failing to pay child support, in violation of the Child Support Recovery Act (CSRA), 18 U.S.C. § 228 (1994) (amended 1998). The court based its finding of willfulness on defendant's failure to seek available employment, which would have earned him enough money to meet his child support obligations. Among the questions we consider is whether, so construed, the CSRA violates the constitutional prohibition against slavery.

I

Ballek and his wife were married in Alaska in 1976 and subsequently had four children. For over a decade Ballek supported his family through his work as a general building contractor. After an acrimonious divorce in 1988, the state court awarded custody of the children to the mother and ordered Ballek to pay $500 a month plus half of their medical expenses as child support. The court further provided that the payment would be reduced to $395 if Ballek's wife and children moved out of state.

During the following nine years, Ballek made only one voluntary child support payment. After a bench trial, the district judge sentenced Ballek to six months imprisonment, and ordered him to pay $56,916.71 in past due child support as restitution.

II

■ The CSRA is violated by willful failure to pay a known child support obligation. The district court found that, at relevant times, Ballek did not have the means to pay child support. The court nevertheless found that Ballek acted willfully because he failed to maintain gainful employment that would have enabled him to meet his child support obligations. Ballek challenges this finding as unsupported by the evidence, as contrary to the statute and as violating the Thirteenth Amendment.[1] Because sufficiency of the evidence turns on our construction of the statute, we consider it last.

■■ "Whoever willfully fails to pay a past due support obligation with respect to a child who resides in another State" violates the CSRA. 18 U.S.C. § 228(a) (1994) (amended 1998). The term "willfully" in this phrase can be read one of two ways: having the money and refusing to use it for child support; or, not having the money because one has failed to avail oneself of the available means of obtaining it. In determining whether the statute is limited to the former meaning of "willfully" or extends to the latter, we note that the obligation in question is not an ordinary debt; it is an award imposed by a state court to ensure the sustenance and well-being of the obligor's children. In making such an award, the state courts take into account a variety of factors, including the non-custodial parent's other obligations and his ability to pay child support; if circumstances change, the obligor can return to court and seek to have the amount reduced. See Alaska Stat. § 25.24.170 (Michie 1998); Curley v. Curley, 588 P.2d 289, 291 n. 2 (Alaska 1979).

Given this means-testing, which is an integral aspect of every child support award, a non-custodial parent should never be confronted with a situation where he is ordered to make child support payments he cannot afford. A non-custodial parent who does not have the funds to satisfy the child support award, and who does not obtain a reduction or remission of the award because of inability to pay, will almost certainly be engaged in willful defiance of the state court's child support order. Given that the CSRA was passed to assist the state courts in enforcing child support decrees, we are confident that Congress did not mean to let absentee parents evade their parental obligations by refusing to accept gainful employment or take other lawful steps to obtain the necessary funds.

The CSRA's clear-cut legislative history supports this construction. The House Report accompanying H.R. 1241, which eventually became the CSRA, addressed the mean-

---

1. Ballek raises his Thirteenth Amendment argument for the first time on appeal. Because this is a purely legal question, we exercise our discre-tion to overlook Ballek's waiver of the issue. See Resolution Trust Corp. v. First Am. Bank, 155 F.3d 1126, 1129 (9th Cir.1998).

ing of "willfully fails to pay." *See* H.R.Rep. No. 102–771, at 6 (1992). The Report notes that "[t]his language has been borrowed from the tax statues that make willful failure to collect or pay taxes a Federal crime." *Id.* The Report then instructs that "the willful failure standard of [the CSRA] should be interpreted in the same manner that Federal courts have interpreted [the] felony tax provisions." *Id.* The Report quotes with approval from our opinion in *United States v. Poll,* 521 F.2d 329 (9th Cir.1975), where we held that, for purposes of proving willful failure to pay,

> the Government must establish beyond a reasonable doubt that at the time payment was due the taxpayer possessed sufficient funds to enable him to meet his obligation *or that the lack of sufficient funds on such date was created by (or was the result of) a voluntary and intentional act without justification in view of all the financial circumstances of the taxpayer.*

*Id.* at 333 (emphasis added). By quoting *Poll,* the drafters of the House Report clearly embraced a meaning of the term "willfully" that goes beyond merely failing to pay when one has the funds available, and extends to the situation where the defendant has acted willfully in not having funds available. Our interpretation follows that of the Eleventh Circuit, the only other court of appeals to have addressed this question. *See United States v. Williams,* 121 F.3d 615, 620–21 (11th Cir.1997).

■■■ Ballek argues that the statute, so construed, runs afoul of the prohibition against slavery or its close cousin, the prohibition against imprisonment for debt. Imprisoning someone for failure to pay a debt can run afoul of the Thirteenth Amendment. *See, e.g., Pollock v. Williams,* 322 U.S. 4, 64 S.Ct. 792, 88 L.Ed. 1095 (1944). However, not all forced employment is constitutionally prohibited. Where the obligation is one that

has traditionally been enforced by means of imprisonment, the constitutional prohibition does not apply. *See, e.g., Robertson v. Baldwin,* 165 U.S. 275, 287–88, 17 S.Ct. 326, 41 L.Ed. 715 (1897) (imprisonment for sailors who desert their ships); *Arver v. United States,* 245 U.S. 366, 390, 38 S.Ct. 159, 62 L.Ed. 349 (1918) (imprisonment for refusal to perform military service); *Butler v. Perry,* 240 U.S. 328, 332–33, 36 S.Ct. 258, 60 L.Ed. 672 (1916) (imprisonment for failure to do roadwork).

We conclude that child-support awards fall within that narrow class of obligations that may be enforced by means of imprisonment without violating the constitutional prohibition against slavery.[2] We start with the self-evident observation that the relationship between parent and child is much more than the ordinary relationship between debtor and creditor. The parent is responsible for bringing the child into the world and in so doing assumes a moral obligation to provide the child with the necessities of life, and to ensure the child's welfare until it is emancipated and able to provide for itself. When parents neglect their children, this raises more than a private legal dispute. It is a matter of vital importance to the community, and every state now enforces, by means of criminal sanctions, the parent's obligation to support children within his custody. *See* Alaska Stat. § 11.51.120 (Michie 1998); *see also* Frances W.H. Kuchler, *Law of Support* 34 (3d ed.1980).

The state's strong concern for the welfare of minor children is also manifested by the fact that parental obligations at the dissolution of a marriage are not left to private agreement. Rather, they are supervised by family courts which are charged with the responsibility of securing the children's welfare despite the estrangement of the parents. Experience teaches that the natural bonds, which normally ensure that children are

---

2. The obligation of parents to support their children was recognized in the United States long before the Thirteenth Amendment was adopted. *See* 2 James Kent, *Commentaries on American Law* 161 (Leonard W. Levy ed., Da Capo Press 1971 (1827); *Stanton v. Willson,* 3 Day 37 (Conn. 1808) (non-custodial divorced father responsible for full financial maintenance of children); *see*

*also* Donna Schuele, *Origins and Development of the Law of Parental Child Support,* 27 J. Fam. L. 807, 811 (1988–1989)). Passage of the Amendment did not diminish the states' commitment to this obligation, and it has only grown over the years. Today, the obligation is universally recognized and we are aware of no state where it is not enforced by means of criminal sanctions.

cared for, are sometimes weakened when the affinity between the parents comes to an end. The supervision—and coercive power—of the court is often invoked to prompt the non-custodial parent to continue providing support. The non-custodial parent's obligation to pay child support is thus derivative of the obligation to provide support in a custodial setting, and such awards are routinely enforced by imprisonment. *See, e.g., Taylor v. Alaska,* 710 P.2d 1019 (Alaska Ct.App.1985) (affirming conviction of non-custodial parent who without lawful excuse failed to provide support for child). The state also has an interest in protecting the public fisc by ensuring that the children not become wards of the state. *Cf. Butler,* 240 U.S. at 333, 36 S.Ct. 258 ("[The Thirteenth Amendment] certainly was not intended to interdict enforcement of ... duties which individuals owe to the State....") At least one state Supreme Court has rejected the argument that imprisonment for failure to work in order to earn enough money to make child support payments violates state and federal prohibitions against slavery. *See Moss v. Superior Court,* 17 Cal.4th 396, 71 Cal.Rptr.2d 215, 222, 950 P.2d 59, 66 (1998).

Were we to hold, as defendant urges us to, that enforcing child support obligations by threat of imprisonment violates the Thirteenth Amendment, we would undermine the well-established practices in the state courts for policing compliance with child support obligations. We would, effectively, put children on the same footing as unsecured creditors. We decline to interpret the Thirteenth Amendment in a way that would so drastically interfere with one of the most important and sensitive exercises of the police power-ensuring that persons too young to take care of themselves can count on both their parents for material support.

■ We therefore turn to Ballek's argument that the record does not support the district court's finding that he acted willfully in failing to pay child support. It clearly does. As the district court found, Ballek earned good money as a contractor before his divorce; on that income he was able to support a family of six. After his divorce, Ballek abandoned construction, which he admitted is "what I know makes me money," and wandered from one low-paying job to another. He only returned to the construction trade after he remarried and moved in with his new wife and her three children. There is ample evidence to support the district court's finding that Ballek was capable of working as a contractor, and that there was contracting work available, which would have paid him enough to meet his child support obligation.

■ The district court did not find that Ballek failed to seek employment as a contractor so that he would be unable to meet his support obligation, but this does not render the finding of willfulness insufficient. The government need not prove that defendant's failure to accept gainful employment was caused by a desire to withhold payments from the spouse and children, or any similar evil motive. *Cf. United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (per curiam) (requisite motive for willful tax violation is intentional violation of known legal duty). It is just as much a violation of the CSRA for a non-custodial parent to fail to pay child support where his refusal to work is motivated by sloth, a change of life-styles or pursuit of new career objectives. For most people, bringing children into the world does limit life choices by imposing certain long-term financial obligations. A parent with minor children at home cannot quit work and become a hobo or go back to school as the fancy moves him. Nor may a non-custodial parent stop making child support payments because he has decided to pursue a post-doctoral degree in macrobiotics. A parent who is subject to an order for child support must seek a modification of the order before making such a life-style change. The family court judge can then determine whether such a change is consistent with the parent's prior obligation to support the children. Where a parent does not seek such a modification, but chooses (for whatever reason) to eschew work that is otherwise available, he is subject to imprisonment for failure to pay, both under state law and under the CSRA.

## III

Finally, Ballek contends that he was entitled to a jury trial because, in addition to imprisonment, he was ordered to pay restitution in the amount of $56,916.71. He argues that the imposition of restitution exceeding $50,000 should convert an otherwise petty offense into a serious one.[3]

The Supreme Court has told us repeatedly, and in no uncertain terms, that by far the most significant factor in determining whether something is a petty offense is the maximum term of imprisonment. *See, e.g., United States v. Nachtigal,* 507 U.S. 1, 3, 113 S.Ct. 1072, 122 L.Ed.2d 374 (1993) (per curiam); *Blanton v. City of North Las Vegas,* 489 U.S. 538, 541–42, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989). Where the maximum term of imprisonment is six months or less, there is a very strong presumption that the offense is petty and defendant is not entitled to a jury trial. *See Blanton,* 489 U.S. at 543, 109 S.Ct. 1289. Other types of punishment in lieu of, or in addition to, incarceration may have some bearing on the question, but these punishments are normally considered far less significant. *See id.* at 542–43, 109 S.Ct. 1289.

Nevertheless, there clearly comes a point where potential punishment other than incarceration may be so severe that the offense will no longer be considered petty. *See, e.g., Twentieth Century Fox Film Corp.,* 882 F.2d at 663. This is especially true if the punishment may be imposed *in addition* to a term of imprisonment. At the same time, the possibility of *some* non-custodial punishment, even in addition to a six-month term of imprisonment, will not change the character of the punishment sufficiently to render the offense serious. The question is how intrusive or severe the additional punishment may

be. *See Blanton,* 489 U.S. at 543, 109 S.Ct. 1289. Where the additional punishment could involve the imposition of a very large fine, or a very long period of probation, or the forfeiture of substantial property, the severity of the total punishment may be sufficiently great so as to turn what would otherwise be a petty offense into a serious one.

The matter is different, however, where the additional punishment consists of restitution. Restitution does not impose an additional obligation on the defendant; rather, it recognizes the debt he already owes the victim. This is especially true where, as here, the debt is already liquidated by way of a state-court judgment or decree. The imposition of a restitution order as part of a federal criminal sentence does cause some additional hardship to the defendant, and gives the victim some additional enforcement mechanisms.[4] But the additional burden on the defendant is relatively minor, as it merely reinforces his existing moral and legal duty to pay a just debt. We therefore hold that the possibility that the district court will order restitution, in addition to a six-month maximum sentence, does not turn an otherwise petty offense into a serious one, no matter how large the sum involved. Ballek was not entitled to a jury trial.

**AFFIRMED.**

---

3. Ballek's proposal for a $50,000 threshold is based on the Second Circuit's holding in *United States v. Twentieth Century Fox Film Corp.,* 882 F.2d 656, 663 (2d Cir.1989), that a criminal contempt fine on a corporation which exceeds $100,000 warrants a jury trial. Ballek argues that because $100,000 constitutes ten times the $10,000 petty offense limit on fines for organizations, *see* 18 U.S.C. §§ 19, 3571(c)(6), (7) (West Supp.1998), the threshold for individuals should likewise be ten times the $5,000 petty offense limit on fines for individuals, *see id.* §§ 19, 3571(b)(6), (7).

4. In addition to the lien upon the defendant's property that the United States automatically receives by virtue of an order of restitution, *see* 18 U.S.C. § 3613(c) (West Supp.1998), the custodial parent may also obtain such a lien, *see id.* § 3664(m)(1)(B). Further, if the delinquent parent continues to willfully fail to pay his past due child support, or fails to make bona fide efforts to meet his obligation, the United States may seek to have him resentenced. *See id.* § 3614; § 3664(*o*)(2).