# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

JACK E. EASTERDAY,
          *Defendant-Appellant.*

No. 07-10347

D.C. No.
CR-05-00150-CRB

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
June 10, 2008—San Francisco, California

Filed August 22, 2008
Amended April 27, 2009

Before: Mary M. Schroeder and N. Randy Smith,
Circuit Judges, and Valerie Baker Fairbank,* District Judge.

Opinion by Judge Schroeder;
Dissent by Judge N.R. Smith

---

*The Honorable Valerie Baker Fairbank, United States District Judge
for the Central District of California, sitting by designation.

4869

## COUNSEL

Gregory V. Davis, Washington, D.C., for plaintiff-appellee United States of America.

Dennis P. Riordan, San Francisco, California, for defendant-appellant Jack E. Easterday.

## ORDER

The opinion filed August 22, 2008, and appearing at 539 F.3d 1176 (9th Cir. 2008), is hereby amended. The amended opinion is filed concurrently with this Order.

With this amendment, Judge Schroeder has voted to deny the petition for rehearing en banc, and Judge Fairbank has so recommended. Judge N.R. Smith has voted to grant the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing en banc is DENIED. No further petitions for rehearing or rehearing en banc will be accepted.

## OPINION

SCHROEDER, Circuit Judge:

This case illustrates the enduring truth of Ben Franklin's sage observation that "nothing is certain but death and taxes." It is an appeal from a conviction for willful failure to pay over employee payroll taxes, in violation of 26 U.S.C. § 7202. The defendant-appellant, Jack Easterday, sought an "ability to pay

instruction" in order to contend to the jury that his failure to pay over the taxes he owed was not "willful," because he had spent the money on other business expenses and therefore could not pay it to the government when it was due. The district court refused to give the instruction, and Easterday subsequently was convicted and sentenced to thirty months in prison.

The requested instruction was drawn from a portion of a 1975 decision of this court, *United States v. Poll*, 521 F.2d 329 (9th Cir. 1975), that we have never subsequently cited favorably in the context of a prosecution for failure to pay taxes. *Poll* in turn relied upon an earlier Ninth Circuit decision, *United States v. Andros*, 484 F.2d 531 (9th Cir. 1973), that two other circuits have expressly rejected. *See United States v. Tucker*, 686 F.2d 230, 233 (5th Cir. 1982); *United States v. Ausmus*, 774 F.2d 722, 725 (6th Cir. 1985). Most significantly, the holding of *Poll* that formed the basis for the proposed instruction was effectively eradicated by subsequent Supreme Court authority.

Easterday contends that *Poll* is binding on us because this court has never expressly overruled it. The district court held that *Poll* was no longer good law. We agree with the district court. *Poll's* requirement that the government prove that the taxpayer had sufficient funds to pay the tax was premised on a definition of willfulness that included some element of evil motive. The Supreme Court subsequently rejected any such definition of willfulness in the tax statutes. *See United States v. Pomponio*, 429 U.S. 10, 12 (1976) (per curiam); *see also United States v. Cheek*, 498 U.S. 192, 201-02 (1991). "Willful" in the tax context means a voluntary, intentional violation of a known legal duty. *See Cheek*, 498 U.S. at 201-02; *United States v. Powell*, 955 F.2d 1206, 1211 (9th Cir. 1992). In other words, if you know that you owe taxes and you do not pay them, you have acted willfully. *Poll* has continued to be referred to occasionally in other contexts, principally in the child support area. *See United States v. Ballek*, 170 F.3d 871,

874 (9th Cir. 1999); H.R. Rep. No. 102-771, at 6 (1992). It is not, however, good tax law. We therefore affirm.

## Background

Easterday operated a chain of nursing homes in Northern California through a parent corporation, Employee Equity Administration ("EEA"), and its subsidiaries. Between 1998 and 2005, the total payroll tax liability for EEA and its subsidiaries for the period from the fourth quarter of 1998 through the fourth quarter of 2005 was $44,864,162, of which $26,018,869 was paid. Although the companies' tax filings accurately stated its tax liabilities, Easterday, through the corporation, repeatedly failed to pay over to the Internal Revenue Service ("IRS") the full amount of payroll taxes due.

The IRS sent Easterday's companies numerous notices requesting payment of the delinquent taxes. When those notices did not result in payment, the IRS sent notices informing Easterday's companies of an intent to levy against each company's assets. Although Easterday was cooperative with the IRS and took full responsibility for the tax delinquency, his pattern of nonpayment continued. The IRS assessed liens against corporate accounts, but when payment was still not forthcoming, it eventually filed criminal charges. In 2005, the government charged Easterday with 109 counts of failure to pay over taxes in violation of 26 U.S.C. § 7202, with each count representing a different quarter in which the taxes of EEA and its subsidiaries were deficient.

Easterday did not dispute that he failed to pay the taxes when due. His defense was simply that he lacked the financial ability to comply with his tax obligations. Although the district court ruled that ability to pay was not relevant, Easterday was able to put on testimony that the nursing homes were struggling financially and he had trouble paying the bills, with losses of more than $20,000,000 between 1996 and 2005.

Easterday's witnesses testified, in essence, that Easterday did not pay the payroll taxes because he used the money to pay other company bills in order to keep the nursing homes operational. Easterday asked the court to instruct the jury that the government, in order to prove a willful failure to pay taxes, must prove that at the time the taxes were due, the taxpayer had the funds, and hence the ability to pay the obligation. Easterday's proposed instruction was drawn in part from the opinion in *United States v. Poll*, and provided as follows:

> The word "willfully" means a voluntary, intentional violation of a known legal duty, and not through ignorance, mistake, negligence, even gross negligence, or accident. In other words, the defendant must have acted voluntarily and intentionally and with the specific intent to do something he knew the law prohibited; that is to say, with the intent either to disobey or disregard the law.
>
> . . . .
>
> In the context of this case, in order for the government to meet its burden of willfulness beyond a reasonable doubt, it must prove that on the dates the taxes were due the taxpayer possessed sufficient funds to be able to meet his legal obligations to the government or that the lack of sufficient funds on such date was created by (or was the result of) a voluntary and intentional act, without justification in light of the financial circumstances of the taxpayer.

The district court declined to give this instruction, but did instruct the jury that the government had the burden of proving that the defendant did not have a good faith belief that he was complying with the tax laws, and that a defendant's belief could be in good faith even if it was unreasonable. The court also instructed the jury that "[t]he tax laws do not permit an employer to choose to use the monies held in trust for the

United States for other purposes, such as to pay business expenses."

Following a six-day jury trial, Easterday was found guilty on 107 of 109 counts. The district court denied Easterday's motion for a judgment of acquittal or a new trial and sentenced him to 30 months imprisonment, followed by three years supervised release. Easterday now appeals from the judgment and sentence.

Easterday's principal contention on appeal is that pursuant to *United States v. Poll*, he was entitled to a jury instruction on the ability to pay "element" of 26 U.S.C. § 7202, and he was entitled to present evidence to negate that "element." Accordingly, Easterday argues that the district court erred in declining to give a *Poll* instruction and that it abused its discretion by limiting the testimony Easterday could offer concerning the financial situation of, and burdens on, his companies.

**Discussion**

**[1]** The statute under which Easterday was found guilty is 26 U.S.C. § 7202, a fairly rarely invoked provision that criminalizes a willful failure to pay over employees' federal income withholding taxes on wages. Section 7202 provides that "[a]ny person required . . . to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall . . . be guilty of a felony."

The main issue in this appeal, as well as a subject of considerable debate before the district court, pertains to the status of *Poll*, and to what constitutes "willfulness" under the Tax Code. Specifically, the parties disagree as to whether "willfulness" requires an affirmative showing by the government that a defendant had an ability to pay his tax obligations and whether it can be negated by a showing that a defendant was

financially unable to satisfy his tax debt. This court has not meaningfully revisited this issue since the 1970s.

In *United States v. Andros*, 484 F.2d 531, 533-34 (9th Cir. 1973), we said that to establish the "wilful failure to pay the taxes assessed," the government must prove that, on the date the taxes were due, the taxpayer possessed "sufficient funds" to pay the taxes, and that the taxpayer voluntarily and intentionally did not pay them. We went on to say: "the requirement of wilfulness connotes 'bad faith or evil intent' or 'evil motive and want of justification in view of all the financial circumstances of the taxpayer.' " *Id.* at 534 (quoting *United States v. Bishop*, 412 U.S. 346 (1973)).

**[2]** Two years later, in *United States v. Poll*, this court apparently found plausible the taxpayer's contention that the failure to pay over the taxes could not be considered "willful" because he had offered to prove "that the corporation lacked the liquid resources to pay the full amounts due and that he intended to make up the deficiencies later." 521 F.2d at 330-31. Citing to *Andros* and *Spies v. United States*, 317 U.S. 492, 497-98 (1943), we held that Poll's offer of proof regarding the liquid resources of the corporation was relevant to the determination of whether the failure to pay over taxes was willful. 521 F.2d at 332. In the language that Easterday sought to include as part of the charge to the jury in this case, we said:

> [T]o establish willfulness the Government must establish beyond a reasonable doubt that at the time payment was due the taxpayer possessed sufficient funds to enable him to meet his obligation or that the lack of sufficient funds on such date was created by (or was the result of) a voluntary and intentional act without justification in view of all the financial circumstances of the taxpayer.

*Id.* at 333.

This holding in *Poll* regarding ability to pay relied upon a definition of willfulness, taken from *Spies* and *Andros*, that included an element of "evil motive." 521 F.2d at 333 (citing *Spies*, 317 U.S. at 498)). We recognized this in *Sorenson v. United States*, 521 F.2d 325, 328 n.3 (9th Cir. 1975) (quoting *Spies*, 317 U.S. at 498), where we said: "The *Poll* holding is only applicable to the criminal test of willfulness which requires 'some element of evil motive and want of justification in view of all the financial circumstances of the taxpayer.' "

**[3]** The year after this court decided *Poll*, the United States Supreme Court decided *United States v. Pomponio*, 429 U.S. 10 (1976) (per curiam), in which it repudiated this formulation of willfulness. In *Pomponio*, the Court examined the various formulations that had been used for the definition of "willfully" in the Tax Code. *See id.* at 12. The Court attempted to dissipate the confusion that had arisen from its decision in *United States v. Bishop*, 412 U.S. 346 (1973), in which the Court referred to a number of formulations of the standard, including the formulation it used in *Spies*, of "evil motive and want of justification in view of all the financial circumstances of the taxpayer."

The troublesome paragraph in *Bishop* was the following:

> The Court, in fact, has recognized that the word 'willfully' in these statutes generally connotes a voluntary, intentional violation of a known legal duty. It has formulated the requirement of willfulness as 'bad faith or evil intent,' *United States v. Murdock*, 290 U.S. 389, 398, or 'evil motive and want of justification in view of all the financial circumstances of the taxpayer,' *Spies v. United States*, 317 U.S. 492, 498, or knowledge that the taxpayer 'should have reported more income than he did.' *Sansone v. United States*, 380 U.S. 343, 353. *See James v.*

*United States*, 366 U.S. 213, 221; *McCarthy v. United States*, 394 U.S. 459, 471.

412 U.S. at 360.

**[4]** The court in *Pomponio* endeavored to erase the misconception that such different formulations, including the "evil motive" formulation of *Spies*, actually established different standards. The Court clarified that "willfulness" means a voluntary, intentional violation of a known legal duty, and does not "require[ ] proof of any [other] motivative." 429 U.S. at 12. The Court said, "Our references to other formulations of the standard did not modify [that] standard." *Id.* The Court explained that *Bishop* "did not . . . hold that the term requires proof of any motive other than an intentional violation of a known legal duty." *Id.*

Accordingly, the portion of our decision in *Poll* which created an additional requirement of proving ability to pay has been undermined by the Supreme Court's subsequent decision in *Pomponio*. *Poll* is not consistent with the intervening authority of the United States Supreme Court that must control our decision here.

In support of his contention that *Poll* nevertheless remains good law, Easterday argues that *Pomponio* is "coextensive" with this court's earlier determination in *United States v. Hawk*, 497 F.2d 365, 368 (9th Cir. 1974), that neither bad purpose nor evil motive is an independent element of willfulness. Easterday reasons that because *Poll* stated that it was consistent with *Hawk*, and *Pomponio* approved *Hawk*, then *Poll* is still good law.

This argument does not withstand close analysis. *Poll* involved a charge of willful failure to collect or pay over tax. *Poll* distinguished *Hawk* on the basis that the offense charged in *Hawk* "was a *willful failure to file federal income tax returns*." *Poll*, 521 F.2d at 332 (emphasis in original). There-

fore, instead of following *Hawk*, *Poll* followed our earlier decision in *Andros* because *Andros* involved prosecution of a willful failure to pay a tax. *Id. Andros*, in turn, had followed the Supreme Court's decision in *Spies*. In *Poll*, we quoted at length from *Spies*, highlighting its statement with respect to a charge of willful failure to pay a tax, that "*[w]e would expect willfulness in such a case to include some element of evil motive and want of justification in view of all the financial circumstances of the taxpayer.*" *Poll*, 521 F.2d at 333 (citing *Spies*, 317 U.S. at 498) (emphasis in original). Because *Poll* applied the *Spies* "evil motive" formulation of willfulness, and expressly distinguished *Hawk*, *Poll* held that financial circumstances were relevant to proof of willfulness under 26 U.S.C. § 7202.

Later, in *Pomponio*, the Supreme Court approved the willfulness formulation of *Hawk*, but disapproved the "evil motive" formulation of *Spies*, holding that the standard is the same in all tax contexts. It approved the standard iterated in *Bishop*: "a voluntary, intentional violation of a known legal duty," and continued, "[o]ur references to other formulations of the standard did not modify the standard set forth in [*Bishop*]." *Pomponio*, 429 U.S. at 12-13. *Pomponio* thus undermines the heart of *Poll's* holding that financial circumstances are relevant to a determination of willfulness under § 7202, failure to collect or pay over tax. This is because *Pomponio* expressly repudiates *Spies'* "evil motive" formulation on which *Poll* relied. 429 U.S. at 11-12.

The dissent, however, insists that the basis for *Poll's* requirement of proving an "ability to pay" has not been undermined. It does so because it fails to recognize that the *Poll* requirement was founded upon the *Spies* formulation of willfulness that the Supreme Court rejected in *Pomponio*. Although the dissent agrees that *Pomponio* intended to do away with the misconception that the "evil motive" formulation of *Spies* established a different standard of willfulness,

the dissent fails to recognize that *Poll's* holding rested on just such a misconception.

This court, in *Poll*, thus held that the ability to pay was relevant to the charge of willful failure to collect or pay over tax because of *Spies'* incorporation of an element of "evil motive" into the requirement of willfulness in such tax cases. After *Pomponio*, we must hold that there is no longer any requirement of evil motive, upon which *Poll's* holding rested.

**[5]** We therefore hold that insofar as *Poll* may be interpreted as requiring the government, in a failure to pay case under § 7202, to prove that defendant had the money to pay the taxes when due, and allowing the defendant to defend on the ground that he had spent the money for other expenses, *Poll* is inconsistent with *Pomponio*. It is also inconsistent with common sense, for we think it unlikely that even under *Poll* and *Spies*, a defendant could succeed in arguing that he did not willfully fail to pay because he spent the money on something else. *Cf. United States v. Gilbert*, 266 F.3d 1180, 1185 (9th Cir. 2001) (concluding that defendant's "act of paying wages to his employees, instead of remitting withholding taxes to the IRS, shows that he voluntarily and intentionally violated § 7202").

Indeed, in rejecting *Andros* and *Poll*, two of our sister circuits have made that very point. In *United States v. Tucker*, 686 F.2d 230 (5th Cir. 1982), a prosecution for willfully failing to pay income taxes, under 26 U.S.C. § 7203, the defendant argued that he could not pay the taxes when they were due because he had no assets to satisfy the debt and that his failure to pay was not willful. The Fifth Circuit said that "[t]his argument borders on the ridiculous. . . . [A] financial ability to pay the tax when it comes due is not a prerequisite to criminal liability under § 7203. Otherwise, a recalcitrant taxpayer could simply dissipate his liquid assets at or near the time when his taxes come due and thereby evade criminal liability." *Id.* at 233. In *United States v. Ausmus*, 774 F.2d 722,

725 (6th Cir. 1985), the Sixth Circuit "rejected" the language in *Andros* that suggested financial ability to pay was relevant to criminal liability. The court said, "[o]therwise, a recalcitrant taxpayer could spend his money as fast as he earns it and evade criminal liability while not paying taxes as long as his bank balance is zero when the taxpayer's taxes are due." *Id.* Despite what we consider to be the unassailable logic presented by our sister circuits here, Easterday asks us to follow the contrary reasoning of *Andros* and *Poll* essentially because we have never formally repudiated it before now.

While we may not have explicitly overruled *Poll* or *Andros* in the more than three decades since we issued those opinions, neither have we cited them for the proposition that Easterday asserts here. *Poll* is not completely dead, for it has been used as a shorthand term describing the standard of "willful failure" to pay that has been discussed in the context of child support. *See United States v. Ballek*, 170 F.3d 871, 874 (9th Cir. 1999); H.R. Rep. No. 102-771, at 6 (1992). In the tax field, however, it now exists only as a nearly completely buried obstacle to traffic that generally has run over it or passed it by for more than thirty years.

**[6]** The only remaining question is whether we are nevertheless bound by *Poll* because it has not been overruled by an en banc court. Generally, a panel opinion is binding on subsequent panels unless and until overruled by an en banc decision of this circuit. *See*, *e.g.*, *In re Complaint of Ross Island Sand & Gravel v. Matson*, 226 F.3d 1015, 1018 (9th Cir. 2000) (per curiam) ("[A]bsent a rehearing en banc, we are without authority to overrule [controlling circuit precedent].").

**[7]** In *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003), we convened an en banc court to consider the question of when a panel decision may be overruled by intervening higher authority that, while not on an identical issue or expressly repudiating the panel decision, is inconsistent with its reasoning. We held that en banc review is not required to overturn

a case where "intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority." *Id.* at 900. We explained that we must avoid inconsistencies between our decisions and the decisions of a court of last resort. We said:

> We must recognize that we are an intermediate appellate court. A goal of our circuit's decisions, including panel and en banc decisions, must be to preserve the consistency of circuit law. The goal is codified in procedures governing en banc review. *See* 28 U.S.C. § 46; Fed. R. App. P. 35. That objective, however, must not be pursued at the expense of creating an inconsistency between our circuit decisions and the reasoning of state or federal authority embodied in a decision of a court of last resort.
>
> We hold that the issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.

335 F.3d at 900.

**[8]** Pursuant to *Miller*, we conclude that it is not necessary to convene an en banc court in order to hold that *Poll*, and its antecedent *Andros*, are no longer binding authority for the proposition that a defendant's ability to pay his tax liability is relevant to the determination of willfulness under 26 U.S.C. § 7202. In keeping with *Pomponio*, 429 U.S. at 12, and *Cheek*, 498 U.S. at 201-02, we hold that willfulness does not require the government to prove that a defendant had the ability to meet his tax obligations. The district court's refusal to give a *Poll* instruction to the jury and the instruction it did give on willfulness were thus proper.

**[9]** For similar reasons, the district court did not abuse its discretion in refusing to admit evidence proffered by Easter-

day in order to show how and why he spent money owed to the IRS to pay other business expenses. Such evidence would have been relevant only if a defendant were entitled to defend on the ground that he had spent the tax money for other needs. Because the financial circumstances of a defendant do not bear on the determination of willfulness under § 7202, Easterday's proffered evidence was irrelevant, and the district court did not abuse its discretion by excluding it. *See* Fed. R. Evid. 401.

Easterday's remaining contentions are without merit.

**AFFIRMED.**

---

N.R. SMITH, Circuit Judge, dissenting:

In this case, I find myself between "the proverbial rock and a hard place." I can either adhere to precedent (with which I do not agree) or I can join the majority and try to overrule bad circuit precedent. Although I agree that *United States v. Poll*, 521 F.2d 329 (9th Cir. 1975) is bad law, *Poll* is the controlling law of this circuit and I understand a three-judge panel is not able to undo precedent set forth by another three-judge panel. *See Hulteen v. AT&T Corp.*, 498 F.3d 1001, 1009 (9th Cir. 2007) ("A three-judge panel must follow a prior circuit decision unless a subsequent decision by a relevant court of last resort either effectively overrules the decision in a case 'closely on point' or undercuts the reasoning underlying the circuit precedent rendering the cases 'clearly irreconcilable.' " (citation omitted)). In my view, because *Poll* is not irreconcilable with *United States v. Pomponio*, 429 U.S. 10 (1976) (per curiam), we are required to either follow *Poll* or make a sua sponte en banc call. *See In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1018 (9th Cir. 2000) (per curiam) ("[A]bsent a rehearing en banc, we are without authority to overrule [controlling circuit precedent].").

The majority, however, has chosen to write around circuit precedent in order to avoid a result that they do not like. I therefore respectfully dissent for the following reasons. First, the majority legally errs by finding that *Poll* is no longer good law. Second, because of its error in finding that *Poll* was overruled by *Pomponio*, the majority incorrectly affirms the district court in its refusal to instruct the jury that the government must prove that Easterday had the financial ability to meet his tax obligations. Thus, I would reverse and remand for a new trial, because Easterday's ability to pay was an element of the crime the government needed to prove beyond a reasonable doubt.

## I.   Discussion

*Poll* discusses two separate questions: (a) willfulness, and (b) the relevance of evidence demonstrating an inability to pay in order to rebut the willfulness of a failure to pay over employee payroll taxes. *See* 521 F.2d at 331 ("These actions raise two questions: Viz. whether the foregoing definition of 'willfully' is correct and whether the evidence offered to rebut the presence of willfulness was irrelevant and inadmissible."). In *Poll*, we held that the willfulness definition was correct, and that the evidence of inability to pay was relevant to rebut the presence of willfulness. *See id.*

The majority, however, incorrectly concludes that "*Poll*'s requirement that the government prove that the taxpayer had sufficient funds to pay the tax was premised on a definition of willfulness that included some element of evil motive." In *Poll*, we based our holding, in part, on Supreme Court precedent found in *Spies v. United States*, 317 U.S. 492, 498 (1943), which states that "[w]e would expect willfulness . . . to include some element of evil motive and want of justification in view of all the financial circumstances of the taxpayer." *Poll*, 521 F.2d at 333. We also, however, relied on *United States v. Hawk*, 497 F.2d 365 (9th Cir. 1974) to recognize that it is "not error to fail to include the words 'and/or evil

motive' " when determining the "willfully" standard. *Poll*, 521 F.2d at 332.

The majority correctly recognizes that the Supreme Court "in *Pomponio* endeavored to erase the misconception that such different formulations, including the 'evil motive' formulation of *Spies*, actually established different standards." In *Pomponio*, the Court held that the term "willfully" does not require "proof of any motive other than an intentional violation of a known legal duty." 429 U.S. at 12. The Court explained the meaning of willfulness by stating that

> The Court, in fact, has recognized that the word "willfully" . . . generally connotes a voluntary, intentional violation of a known legal duty. It has formulated the requirement of willfulness as "bad faith or evil intent," or "evil motive and want of justification in view of all the financial circumstances of the taxpayer," or knowledge that the taxpayer "should have reported more income than he did."

> Our references to other formulations of the standard did not modify the standard [that the word 'willfully' . . . generally connotes a voluntary, intentional violation of a known legal duty].

*Id.* (internal citations and quotations omitted).

Thus, even when the formulation of "evil motive" or "bad purpose" is used in explaining the standard for willfulness, the standard is not modified. Willfulness, in the context of tax laws, "simply means a *voluntary*, *intentional* violation of a known legal duty." *Id.* at 12-13 (emphasis added) (citing *Hawk*, 497 F.2d at 368); *see also United States v. Cheek*, 498 U.S. 192, 201-02 (1991). There is no requirement the government prove bad purpose or evil motive and want of justification. *See Pomponio*, 429 U.S. at 12-13; *Hawk*, 497 F.2d at

368. The holding in *Poll* is therefore consistent with the *Pomponio* definition of willfulness.

In *Poll*, we held that "to establish willfulness the Government must establish beyond a reasonable doubt that at the time payment was due the taxpayer possessed sufficient funds to enable him to meet his obligation or that the lack of sufficient funds on such date was created by (or was the result of) a *voluntary* and *intentional* act without justification in view of all the financial circumstances of the taxpayer." 521 F.2d at 333 (emphasis added). Our holding in *Poll* therefore relied on the same definition of willfulness as determined in *Pomponio* ("a *voluntary*, *intentional* violation of a known legal duty"). In fact, *Pomponio* actually supports that idea that *Poll* used the correct definition of willfulness. *See* 429 U.S. at 12-13 (noting that "as the other Courts of Appeals that have considered the question have recognized, willfulness in this context simply means a voluntary, intentional violation of a known legal duty" (citing *Hawk*, 497 F.2d at 366-69)).

As discussed, our determination of willfulness in *Poll* relied, in part, on *Hawk*, which the Supreme Court approved in *Pomponio*. In *Hawk*, we noted that the Supreme Court, in *Murdock v. United States*, 290 U.S. 389 (1933), held that

> [W]illfulness requires proof that the act was done with knowledge it was wrongful. The Court discussed a number of ways of expressing this type of specific intent, and among the terms mentioned were "bad purpose" and "evil motive."
>
> However, neither bad purpose nor evil motive is an independent element of a willful failure to file under § 7203. The term "evil motive" is merely a "convenient shorthand expression to distinguish liability based on conscious wrongdoing from liability based on mere carelessness or mistake." Thus the term expresses, in a brief way, the more cumber-

> somely stated concept of specific intent in *Murdock*, a concept the instructions must ultimately convey. This, we think, was all that *Murdock-* and *Bishop-* meant by the use of that term.

*Hawk*, 497 F.2d at 368 (internal citations omitted).

Thus, although *Poll* quoted Supreme Court precedent regarding the inclusion of "evil motive and want of justification" to determine willfulness, we were referencing the "voluntary, intentional violation of a known legal duty" formulation discussed in *Pomponio*. Even though the wording was different, Supreme Court precedent dictates that the meaning underlying the term "willfulness" in *Poll* was the same as used in *Hawk* and *Pomponio*. *Poll*'s definition of willfulness was not premised on a belief that willfulness requires an evil motive or bad purpose. *Poll*, therefore, still holds that the ability to pay is relevant to demonstrate willfulness, and *Pomponio* did not state otherwise. Although *Pomponio* did discuss the willfulness question, *see* 429 U.S. at 12-13, the portion of our decision in *Poll* that created an additional requirement of proving ability to pay was not undermined by *Pomponio*. The basis for *Poll*'s requirement of proving ability to pay has therefore not been eliminated. No subsequent decision from this circuit or from a relevant court of last resort has overruled the requirement presented in *Poll* that evidence regarding inability to pay is relevant to rebut the presence of willfulness. *See Poll*, 521 F.2d at 332 ("We believe, and so hold, that the defendant's offer of proof regarding the liquid resources of the corporation and his intention to make up the deficiencies later was relevant and admissible in his effort to refute the willfulness of the failure to pay over.").

*Pomponio* also did not overrule *Poll* because *Pomponio* and *Poll* address different issues. In *Pomponio*, the Supreme Court, affirming this court's holding in *Hawk*, held that evil motive is not an independent element of filing false income

tax returns under 26 U.S.C. § 7206 and that instructions regarding evil motive are thus unnecessary. 429 U.S. at 12-13. In *Poll*, by contrast, this court considered whether the government must prove that a defendant was capable of meeting his tax obligations. 521 F.2d at 333. We specifically noted that the ability to pay rule was not contrary to *Hawk* because *Hawk* addressed "a [w]illful failure to file [a] federal income tax return[ ]," not a crime "involving a failure to pay." 521 F.2d at 332. Because *Pomponio* affirmed *Hawk*, and because this court held, in *Poll*, that the ability to pay rule is consistent with *Hawk*, *Poll* is consistent with *Pomponio*. Thus, *Pomponio* is not "clearly irreconcilable" with *Poll*, and *Poll* remains good law. *See Hulteen*, 498 F.3d at 1009. We are therefore bound by *Poll* because it has not been overruled by an en banc court. *See In re Complaint of Ross Island Sand & Gravel*, 226 F.3d at 1018.

The majority also references this court's decision in *United States v. Gilbert*, 266 F.3d 1180 (9th Cir. 2001), for the proposition that *Poll* is inconsistent with both *Pomponio* and common sense. In *Gilbert*, the defendant argued "that his failure to pay over the withholding tax was not willful because [his business] did not have the funds to pay the taxes." 266 F.3d at 1185. The government responded "that it presented sufficient evidence at trial that Gilbert voluntarily and intentionally paid net wages to his employees with knowledge that withholding taxes were not being remitted to the IRS." *Id*. This court affirmed on the basis that the evidence was sufficient. *See Id*. This court, however, did not explicitly or implicitly overrule the ability to pay rule. The district court in *Gilbert* had given a *Poll* instruction, and this court did not criticize the district court for having done so. In fact, this court did not reference the ability to pay rule or *Pomponio*. This court instead discussed how *Poll* did not concern "whether § 7202 required the failure [to *both* account for and pay over withholding tax], but instead addressed the issue of how to define willfulness under § 7202." *Id*. at 1183. This court held that "whether § 7202 required the failure to both

account for and pay over the tax, were dicta." *Id*. That holding, however, does not address whether the ability to pay can be used as a defense. *Gilbert* therefore merely discusses whether § 7202 requires the failure to both account for *and* pay over withholding tax. Thus, there is no basis in *Gilbert* for the proposition that *Pomponio* overruled *Poll*.

To the extent the district court excluded evidence regarding the financial situation of Easterday's companies and his inability to pay (based on its flawed interpretation of *Pomponio*), the district court abused its discretion. *See United States v. Gallagher*, 99 F.3d 329, 331-32 (9th Cir. 1996). Moreover, the district court's failure to instruct the jury that the government must prove that Easterday had the ability to meet his tax obligations is a constitutional error "because the jury did not have the opportunity to find each element of the crime beyond a reasonable doubt." *Martinez v. Borg*, 937 F.2d 422, 423 (9th Cir. 1991). The district court rejected a large amount of evidence regarding Easterday's nursing homes' financial difficulties. Because this evidence "could rationally lead to a contrary finding with respect to the omitted element," the district court's error was not harmless and Easterday is entitled to a new trial. *Neder v. United States*, 527 U.S. 1, 19 (1999).