PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

DAVID R. FULLER,

        Defendant - Appellant.

No. 12-3337

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 2:11-CR-20059-KHV-1)**

---

Jabari Brooks Wamble, Assistant United States Attorney, Kansas City, Kansas, (Barry R. Grissom) United States Attorney, Kansas City, Kansas, with him on the brief) for Plaintiff-Appellee.

Tim Burdick, Federal Public Defender, Kansas City, Kansas for Defendant-Appellant.

---

Before **TYMKOVICH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.

---

**PHILLIPS**, Circuit Judge.

---

    A Kansas jury convicted David Fuller of willfully failing to pay more than $50,000 of past-due child support. Both after the government's case-in-chief and at the close of all evidence, Fuller moved for acquittal. The district court reserved ruling on the motions and then, several weeks after the verdict, issued a single order denying both. On appeal, Fuller challenges the district court's denial of his first motion. He raises two arguments:

(1) that the court erred by relying on an unconstitutional statutory presumption of his "ability to pay" child support, and (2) that without the presumption the government's evidence was insufficient to prove that he "willfully" failed to pay. We find that the district court did not rely on the presumption and that the government presented sufficient evidence that Fuller had willfully failed to pay his child-support obligation.[1] Accordingly, we affirm.

BACKGROUND

In 1976, David Fuller met Delores Jones[2] while they were both working at King Radio, an aviation parts supplier in Ottawa, Kansas. After marrying and divorcing, the two were again married in 1983. Fuller and Ms. Jones had three children—in 1985, 1988, and 1991. The couple argued during the marriage about Fuller's meager earnings as a musician amid the pressing financial realities of raising three children. While Ms. Jones believed that Fuller was a talented musician, she testified that she always thought that once they had children Fuller would help her raise them financially and otherwise. She felt that Fuller had chosen his music over his family because on countless occasions Fuller would not come home after music gigs until the next morning. As a result, she often ran late in getting the children to day care and herself to work.

---

[1] Fuller styles the issue on appeal as whether he "was entitled to a judgment of acquittal at the end of the government's case-in-chief without the presumption." Appellant's Br. 22–23.

[2] In this opinion, we use the name Ms. Jones took after marrying David Jones in 1999.

Tired of Fuller's act, Ms. Jones obtained a divorce in 1994. At the divorce hearing, which Fuller did not attend, Ms. Jones said she didn't believe that Fuller had the means to pay child support due to his lifestyle as a musician. She felt that he maybe could do so if he would work a regular job, but she knew "that wasn't going to happen." R. vol. 2, at 70. By the time of the divorce, she felt that she "couldn't … support him financially anymore." *Id*. at 49. The divorce court ordered that Fuller pay a total monthly child support obligation of $347.

Over the years after the divorce, Fuller played music and Ms. Jones provided for the children.[3] In August 1996, Ms. Jones sought help in collecting child support from Kansas Social and Rehabilitation Services, but she gave up when told that she needed to hire an attorney. Although Fuller claimed to have paid scattered sums to Ms. Jones in the early years, he failed to pay any child support as ordered by the state court. By the time of his federal trial, he owed $54,478.36 in unpaid child support.

During its case-in-chief, the government called as witnesses Ms. Jones, business owners who paid Fuller to perform music, and child support personnel who detailed their years-long efforts to locate and collect child support from Fuller.[4] At the close of the government's case, Fuller moved under Federal Rule of Criminal Procedure 29(a) for

---

[3] Despite the obvious challenges of being a sole breadwinner while working full-time and obtaining her college degree, Ms. Jones's efforts have paid off with the three children—two have followed her lead and graduated from college, with the third half-finished.

[4] Because Fuller doesn't appeal on a basis that he had a good-faith belief that support was not owed, we don't recount the evidence offered by government witnesses about their collection efforts against him.

acquittal. He argued that the government had presented insufficient evidence of his ability to pay child support to allow the jury to continue to hear the case. At most, he said the government's evidence showed that he had earned a total of just $5,200 over the 17 years in which the support order was in effect. From this, he argued that there wasn't "enough evidence that if it were submitted to any reasonable jury in the light most favorable to the government that they could come back with a verdict of guilty." R. vol. 2, at 199. In short, he argued that his *actual* earnings controlled whether he had an ability to pay child support. The district court took this motion under advisement, along with Fuller's later motion for acquittal following the close of all evidence. Two months after Fuller's conviction, it issued a single order denying both motions to acquit. The district court sentenced Fuller to five years of probation and ordered that he pay Ms. Jones restitution of $53,778.36 in care of the Kansas Payment Center.

## STANDARD OF REVIEW

We review de novo a district court's decision whether to grant a motion for acquittal. *United States v. Cooper*, 654 F.3d 1104, 1115 (10th Cir. 2011). "We must view the evidence, both direct and circumstantial, in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime." *United States v. White*, 673 F.2d 299, 301–02 (10th Cir. 1982). We "permit the [district] court to enter a judgment of acquittal only if the evidence that defendant committed the

crime is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id*. at 301.

Unfortunately, the district court's order in this case lumped the two acquittal motions together in one analysis and didn't identify what specific evidence justified denying the first motion for acquittal. Because the district court took the first motion under advisement, we are left to review the record to see what evidence supported denial of the first motion to acquit at the close of the government's case in chief.[5] *See* Fed. R. Crim. P. 29(b) ("If the court reserves decision [on a motion for judgment of acquittal], it must decide the motion on the basis of the evidence at the time the ruling was reserved."); *United States v. Delgado-Uribe*, 363 F.3d 1077, 1082 (10th Cir. 2004).

DISCUSSION

## 1. Introduction

In 1998, Congress amended the Child Support Recovery Act of 1992 by passing the Deadbeat Parents Punishment Act of 1998. *United States v. Bigford*, 365 F.3d 859, 863 n. 1 (10th Cir. 2004). The 1992 Act punished as a misdemeanant the first-time offender who "willfully fails to pay a past due support obligation with respect to a child who resides in another State." Child Support Recovery Act of 1992, Pub. L. No. 102-521, § 2(a), 106 Stat. 3403 (codified as amended at 18 U.S.C. § 228(a)(1)). The 1998 Act increased the penalty to a felony for offenders who "willfully fail[] to pay a support obligation with

---

[5] Both parties include in their briefs summaries of Fuller's testimony offered as part of his case-in-chief. Because the sole question on appeal is whether the government presented sufficient evidence at the close of its case, we don't see how Fuller's later testimony is relevant. *See* Fed. R. Crim. P. 29(b). Accordingly, we don't rely upon it.

respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 2 years, or is greater than $10,000." Deadbeat Parents Punishment Act of 1998, Pub. L. No. 105-187, § 2(a)(3), 112 Stat. 618 (codified at 18 U.S.C. § 228(a)(3)). It also added a presumption saying that "[t]he existence of a support obligation that was in effect for the time period charged in the indictment or information creates a rebuttable presumption that the obligor has the ability to pay the support obligation for that time period." *Id.* at § 2(b) (codified at 18 U.S.C. § 228(b)). Fuller was charged and convicted under 18 U.S.C. § 228(a)(3).

## 2. Presumption

The 1998 Act included a new rebuttable presumption of an obligor's ability to pay based solely on the existence of a child-support obligation. 18 U.S.C. § 228(b). Fuller argues that this presumption is unconstitutional and that the district court impermissibly "relied on" it here to find he had an ability to pay the support—which, we understand him to say, is a prerequisite to proving the offense element of "willfulness." Appellant's Br. 17–22. At the outset, it is important to note that while "willfully fail[ing] to pay" is an element of the offense, "ability to pay" is not. *See* 143 Cong. Rec. S12667-01 (daily ed. Nov. 13, 1997) ("Although 'ability to pay' is not an element of the offense, a demonstration of the obligor's ability to pay contributes to a showing of willful failure to pay the known obligation.").

This much clarified, we disagree with Fuller that the court "relied on" a presumed ability to pay in denying the motions to acquit. Unquestionably, the district court

referenced the rebuttable presumption in its order issued several weeks after Fuller's conviction. This reference surprised Fuller—indisputably the government had never sought any benefit of the presumption at trial, and the jury had never been instructed on it.[6] Even so, reading the full order in context, we think that the district court's mention of the presumption was simply part of its overview of 18 U.S.C. § 228.

Indeed, the order itself shows that the district court didn't rely on the presumption to find that Fuller had an "ability to pay." Having referenced the presumption, the district court in the next sentence of its order all but said the opposite: "Here, the Court agrees that the government's evidence—that defendant earned an average of less than $600 per year—failed to demonstrate that defendant's income was sufficient to pay child support." R. vol. 1, at 63. This sentence shows that the district court didn't presume Fuller's "ability to pay" but instead left that burden on the government. Then, after finding that the government had *not* met its burden with evidence of Fuller's actual earnings, the district court continued on with its analysis.

The district court proceeded to find sufficient evidence to support conviction based on Fuller's willful underemployment—not on the statutory presumption of "ability to pay." Had the court relied on the presumption, it would have had no reason to redirect its analysis to its true basis of denial:

> It is just as much a violation of the [Child Support Recovery Act] for a non-custodial parent to fail to pay child support where his refusal to work is motivated

---

[6] Instead, the district court instructed that the jury could only convict if the government proved beyond a reasonable doubt that Fuller "had a legal duty to pay the support obligation, that he knew of his duty, that he voluntarily and intentionally violated that duty, and that [he] knew that his child resided in another state." R. vol. 1, at 43.

by sloth, a change of life-styles or pursuit of new career objectives. For most people, bringing children into the world does limit life choices by imposing certain long-term financial obligations. A parent with minor children at home cannot quit work and become a hobo or go back to school as the fancy moves him. Nor may a non-custodial parent stop making child support payments because he has decided to pursue a post-doctoral degree in macrobiotics. A parent who is subject to an order for child-support must seek a modification of the order before making such a lifestyle change. The family court judge can then determine whether such a change is consistent with the parent's prior obligation to support the children. Where a parent does not seek such a modification, but chooses (for whatever reason) to eschew work that is otherwise available, he is subject to imprisonment for failure to pay, both under state law and under the CSRA.

*Id.* at 64 (quoting *United States v. Ballek*, 170 F.3d 871, 875 (9th Cir. 1999)). As discussed at length below, we believe the government may prove willful failure to pay child support under this theory—which looks beyond a defendant's actual earnings. Because the district court did not rely on the presumption at 18 U.S.C. § 228(b), we need not decide its constitutionality.

## 3. Willful failure to pay

Fuller next argues that, without the benefit of the presumption at § 228(b), the government's evidence was insufficient to prove that his failure to pay child support was willful. This argument, in turn, presents a question of first impression in our circuit— what does "willfully" mean under 18 U.S.C. § 228(a)? Because the statute doesn't give a definition, like the courts before us[7] we look to legislative history:

---

[7] *See, e.g.*, *United States v. Kerley*, 544 F.3d 172, 177 (2d Cir. 2008); *United States v. Smith*, 278 F.3d 33, 37 (1st Cir. 2002); *United States v. Mattice*, 186 F.3d 219, 225 (2d Cir. 1999); *United States v. Ballek*, 170 F.3d 871, 873–74 (9th Cir. 1999); *United States v. Williams*, 121 F.3d 615, 620–21 (11th Cir. 1997).

The operative language establishing the requisite intent under H.R. 1241 [18 U.S.C. § 228] is "willfully fails to pay." This language has been borrowed from the tax statutes that make willful failure to collect or pay taxes a Federal crime, 26 U.S.C. [§§] 7202, 7203. Thus, the willful failure standard of H.R. 1241[18 U.S.C. § 228] should be interpreted in the same manner that the Federal courts have interpreted these felony tax provisions. In order to establish willfulness under those provisions[,]

> the government must establish, beyond a reasonable doubt, that at the time payment was due the taxpayer possessed sufficient funds to enable him to meet his obligation *or that the lack of sufficient funds on such date was created by (or was the result of) a voluntary and intentional act without justification in view of all of the financial circumstances of the taxpayer*.

*U.S. v. Poll*, 521 F.2d 329, 333 (9th Cir. 1975). The willfulness element in the tax felony statutes requires proof of an intentional violation of a known legal duty, and thus describes a specific intent crime. *U.S. v. Birkenstock*, 823 F.2d 1026, 1028 (7th Cir. 1987). The word "willfully" under the tax felony statutes imports a bad purpose or evil motive. *U.S. v. Bishop*, 412 U.S. 346, 361 (1973).The Committee intends that the willful failure standard of [18 U.S.C. § 228] be given similar effect as the willful failure standard contained in these tax felony provisions.

H.R. Rep. No. 102-771, at 6 (1992) (emphasis added).

Consistent with the emphasized language above and with the district court's order, we conclude that possession of sufficient funds is just one way the government can prove willful failure to pay under 18 U.S.C. § 228(a). Willfulness can also exist if the defendant *lacks* sufficient funds, so long as the defendant's financial circumstances result from his own intentional acts.[8] If the government proceeds under this latter theory, it need not prove that the defendant deprived himself of earnings with a motive to deprive his children of support. *See Ballek*, 170 F.3d at 875 ("The government need not prove that

---

[8] As Fuller concedes "[t]he government can also prove willfulness if it proves beyond a reasonable doubt that Mr. Fuller avoided his obligation by taking himself out of the workforce." Appellant's Br. 26.

defendant's failure to accept gainful employment was caused by a desire to withhold payments from the spouse and children, or any similar evil motive.") Instead, it's enough for the government to prove that the defendant could have earned more money to pay down his obligation but intentionally avoided doing so. *See id.* ("It is just as much a violation of the [1992 Act] for a non-custodial parent to fail to pay child support where his refusal to work is motivated by sloth, a change of life-styles or pursuit of new career objectives."). *Cf. United States v. Black*, 125 F.3d 454, 465 (7th Cir. 1997) ("The CSRA does not mandate that the parent's move out-of-state be motivated by a willful attempt to avoid support; the parent need only willfully fail to pay the support.").

We further observe that 18 U.S.C. § 228 doesn't require an obligor to have willfully failed to pay his *entire* support obligation. Instead, the test is whether the obligor could have paid *some* of it. *See United States v. Edelkind*, 525 F.3d 388, 399 (5th Cir. 2008) (finding that the obligor was "more than capable of accepting gainful employment to pay at least some significant portion of his child support obligations"); *United States v. Smith*, 278 F.3d 33, 40 n.5 (1st Cir. 2002) ("[T]he government must demonstrate only that the defendant was able to pay *some* portion of his past due child support . . . .") (quoting *United States v. Mattice*, 186 F.3d 219, 228 (2d Cir. 1999)); *Mattice*, 186 F.3d at 228 ("The relevant 'obligation' under the CSRA . . . is the obligation to pay 'any amount' past due under a state court or administrative child support order."); *United States v. Mathes*, 151 F.3d 251, 254 (5th Cir. 1998) (concluding that defendant's "acknowledgement that he could have paid some amount toward his past due support obligation precludes his financial condition from serving as a bar to criminal liability" and noting that otherwise

-10-

obligors would have a "perverse incentive for extended nonpayment [that] would surely flout Congress's purpose for enacting the statute").

## 4. Standard applied

When the government rested its case-in-chief, the record contained sufficient evidence to support the district court's denial of Fuller's motion to acquit. True, the evidence did not show that Fuller made much money.[9] But even if Fuller lacked the ability to pay any of his owed child support with his actual earnings, the evidence still shows that failure to pay was willful.

The evidence shows that Ms. Jones met Fuller when they both were working at an aviation parts business.[10] She obviously continued to think that he was capable of working a regular job because she argued with him during the marriage about his failure to do so. The evidence also shows that Fuller ably satisfied all employment-related demands of the businesses that hired him to play music. He displayed all the myriad of job skills necessary to secure musical gigs and then succeeded in following through with performances, even gaining acclaim in certain musical circles. Giving the government the benefit of all inferences, as we must, we conclude that the jury could have found beyond

---

[9] We disagree with Fuller's characterization that the evidence showed he made just $5,200 in 17 years. The government simply presented evidence of estimated amounts certain bar and restaurant owners paid Fuller over the years. These sums are not necessarily reflective of Fuller's total earnings.

[10] During his opening statement, which preceded the government's case-in-chief, Fuller's counsel said that in 1999 Fuller also delivered flowers six days a week and amazed people with his ability to keep routes in his head. Because opening statements aren't evidence, we don't use this as a basis to decide the appeal.

a reasonable doubt at the close of the government's case that Fuller's inability to pay any court-ordered child support resulted directly from his own intentional acts. In short, there was sufficient evidence of willful underemployment to convict.

CONCLUSION

Because we conclude that the district court did not rely upon the statutory presumption to deny Fuller's first (or second) motion to acquit, but instead relied upon his intentional underemployment, we need not address further or decide the constitutionality of the rebuttable presumption found at 18 U.S.C. § 228(b). Looking at the government's case-in-chief, we agree with the district court that "the evidence supports a jury finding that defendant voluntarily chose to earn a minimal amount of money while working part-time playing music even though he could have earned substantially more." *Id.* at 64.

We affirm the district court's order.